WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent, vs. ALLIS-CHALMERS WORKERS' UNION, LOCAL 248, U. A. W. A., C. I. O., and others, Appellants. [Two cases.]

*November 19—December 18, 1946.*

A. W. Richter, W. O. Sonnemann, and Dan Sobel, all of Milwaukee, for the appellants.

For the respondent there were briefs by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

WICKHEM, J. Appellants make the following contentions upon this appeal : (1) That Wisconsin Employment Relations Board under sec. 111.07 (7), Stats., has no statutory authority to carry enforcement of its orders beyond judgment in circuit court, and that therefore it has no standing to seek enforcement of a judgment by contempt; (2) that the amended petition charges only criminal contempt. Such questions as are subordinate to the two main issues will be discussed in the course of this opinion.

We proceed to appellants' first contention. Sec. 111.07 (7), Stats., provides, in substance, that if any person neglects to obey an order of the board, the board may petition the circuit court in the county where such person resides "for the enforcement of such order and for appropriate temporary relief or restraining order, and shall certify and file in the court its record in the proceedings." Provision is made for notice and hearing and upon hearing the court may "confirm, modify, or set aside the order of the board and enter an appropriate decree." Appellants' contention is that the statute merely authorizes the board to seek enforcement of its order by an injunctive decree of the circuit court; that upon the entry of judgment the order becomes merged therein and further relief by contempt proceedings is in aid of the judgment and not of

the board's order. While appellants concede that under the decisions the National Labor Relations Board may invoke the remedy of contempt in aid of a judgment enforcing its order, they contend that the Wisconsin Peace Act differs in essential particulars from the National Act. In the first place, it includes unfair labor practices of employees, as well as those of employers, while the National Act is confined to labor practices of employers, most of which did not previously constitute causes of action enforceable in ordinary legal actions. This is claimed to point to the necessity in the National Act of furnishing new machinery of enforcement which is not present under the State Act, at least as far as employees are concerned. It is pointed out that while the National Labor Relations Board may act upon its own initiative, the jurisdiction of the Wisconsin Board is not aroused except when complaints are made to it either by employers or employees. Citations are made to 29 USCA, sec. 160 (a), empowering the National Labor Relations Board to "prevent any person from engaging in any unfair labor practice affecting commerce. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law or otherwise." On the other hand, the Wisconsin Act in sec. 111.07 (1), provides that any controversy concerning unfair labor practices may be submitted to the board, but that nothing in the section shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction. In other words, it is claimed that the Federal Act created new wrongs and that the remedies to redress them were exclusively vested in the National Labor Relations Board, thereby justifying an implication of authority in this board to institute contempt proceedings in support of decrees entered upon its orders, whereas the Wisconsin Labor Relations Board was intended to exercise a passive and more definitely impartial function upon the applications of parties who

were not thereby precluded from seeking ordinary legal remedies in courts of competent jurisdiction. This matter has been decided adversely to appellants in *Wisconsin E. R. Board v. Milk, etc., Union,* 238 Wis. 379, 299 N. W. 31, but it is contended by appellants that the matter was not raised or argued, and that this court assumed rather than decided the point.

We have carefully considered the contentions of appellants, and see no reason to depart from the holding of *Wisconsin E. R. Board v. Milk, etc., Union, supra.* Sec. 111.07 (7), Stats., provides that if any person neglects to obey an order of the board the latter may petition the circuit court of the county where such person resides "for the enforcement of such order and for appropriate temporary relief or restraining order." Although the propriety of the board's order may be examined in such an action, the proceedings are quite distinct from those to review an order of the board which are specifically provided for in sub. (8) of the same section. Under sec. 111.07 (7) the board is not only a proper party to an action to enforce, but is the only party authorized to move so far as proceedings under that section are concerned. We deem it unimportant that sec. 111.07 (1), which provides that "nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction," indicates that ch. 111, Stats., may not completely exhaust the remedy of parties affected by a labor dispute. It is enough that the chapter does give the board sole power to seek enforcement of its orders by action in the circuit court. The only question is whether this includes the power to initiate contempt proceedings in support of the final judgment ordering compliance with the board's order.

Respondent argues that this power is necessarily implied from the express statutory grant of power to enforce its orders by an action in court, and that upon identical enforcement provisions in the National Labor Relations Act the National La-

bor Relations Board concededly had this power. In this connection see *Amalgamated Utility Workers v. Consol. Edison Co.* 309 U. S. 261, 60 Sup. Ct. 561, 84 L. Ed. 738. It is clear to us that these contentions are sound. The reasons for the peculiar provisions of the National Labor Relations Act were set forth in *Wisconsin Labor R. Board v. Fred Rueping L. Co.* 228 Wis. 473, 279 N. W. 673. It was there pointed out that exclusive power was vested in the National Labor Relations Board by 29 USCA, sec. 160 (a) for the reason that theretofore numerous federal agencies had had power to deal with portions of the subject with resulting conflict of jurisdiction and chaos in enforcement.

The power of the National Labor Relations Board to initiate proceedings in labor relations affecting interstate commerce was necessary in view of the source and scope of federal powers to deal with the subject of labor. The National Labor Relations Act is not an exercise of police power. The power of congress to deal with the subject has its source in the commerce clause of the constitution, and the purpose of the act was to prevent such unfair labor practices as proximately affect interstate commerce. The board was given the power to initiate proceedings because it must in each case exercise a discretion to determine whether a particular dispute so proximately affects interstate commerce as to warrant its intervention. In the light of this we see no distinguishing significance in the fact that the National Labor Relations Board has exclusive powers and an initiative that is absent in the case of the Wisconsin Board. This simply means that greater administrative powers and discretion were vested in the Federal Board. Fundamentally, however, both boards are administrative in character, and both have fact-finding functions of a *quasi*-judicial character. The preamble of the Wisconsin Act states that three distinct interests are to be considered in labor disputes: Employer, employee, and general public. When its jurisdiction is aroused, the statute vests the Wis-

consin Labor Relations Board with authority to seek enforcement of its orders by actions in the circuit court. The purpose is to enable it to administer the act efficiently in the interests named in the preamble. There is a necessary implication from the express grant of power to seek enforcement through the courts that the board may seek and obtain effective court action. The objection that so to hold permits the board to seek enforcement of a judgment and not of its order since the latter is merged in the judgment, appears to us to be formal rather than substantial. The provisions and purposes of sec. 111.07 (7), Stats., would be as completely nullified by this construction as would the rights of a party if there were a rule that he might have a judgment without the right to execution. It is suggested that the use of the word "final" in sec. 111.07 (7), used to describe the judgment of the court in proceedings to enforce the orders of the board, relates to the finality of the interest of the board in the proceedings. It is clear to us that the term used in the usually accepted legal sense that a judgment following such proceedings is a final adjudication of the matter litigated unless it be reversed upon appeal.

We conclude that the board has the power to invoke the remedy of contempt as an incident to its power to enforce its judgment by judicial action. In this connection, see *Carter v. Blaine County Inv. Co.* (D. C.) 45 Fed. (2d) 643; *State ex rel. Hoagland v. School Dist. No. 13, etc.,* 116 Mont. 294, 151 Pac. (2d) 168. For the reason that motions interposed in the court below undoubtedly raise the questions heretofore considered, we see no occasion to consider whether appellants' demurrer upon the grounds that the board has no legal capacity to sue properly raises any of the foregoing questions.

We now consider the question whether the facts alleged in the petition show a cause of action for civil or for criminal contempt. This question is not raised by appellants' general demurrer, since if the petition discloses a cause of action, a general demurrer must be overruled. It is, however, effectively

raised by the motions filed herein. Since this subject is governed by statute, it will be convenient to set forth the applicable statutory provisions.

Contempt in civil actions is governed by ch. 295, Stats. Sec. 295.01, Stats., so far as applicable here, provides as follows:

"295.01 Every court of record . . . shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty or any misconduct by which the rights or remedies of a party in an action or proceeding depending or triable in such court . . . may be defeated, impaired, impeded or prejudiced in the following cases: . . .

"(3) Parties to actions . . . and all other persons . . . for any other disobedience to any lawful order, judgment or process of such court. . . ."

Criminal contempt is governed by ch. 256, Stats. Sec. 256.03, Stats., contains seven precisely described situations in which acts may be punished as criminal contempt. The only one applicable here is that described in sub. (3) as "wilful disobedience of any process or order lawfully issued or made by it." These sections indicate, (1) that civil contempt is more limited in scope than criminal contempt, and (2) that many acts which would constitute civil contempts may also be criminal contempts.

In order to constitute civil contempt, the acts must, as specified by the statute, tend to defeat, impair, impede, or prejudice the rights or remedies of a party to an action. *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518; *Vilter Mfg. Co. v. Humphrey,* 132 Wis. 587, 112 N. W. 1095; *Stollenwerk v. Klevenow,* 151 Wis. 355, 139 N. W. 203; *State ex rel. Rodd v. Verage,* 177 Wis. 295, 310, 313, 187 N. W. 830; *Wisconsin E. R. Board v. Milk, etc., Union, supra.* Appellants suggest that the rule announced by the *Rodd Case, supra,* approves that in *Gompers v. Bucks, S. & R. Co.* 221 U. S. 418, 31 Sup. Ct.

492, 55 L. Ed. 797, to the effect that an act constitutes civil contempt only when the contemnor is in a position to purge himself by compliance with the orders of the court. The *Rodd Case* expressly repudiated this and declined to follow the *Gompers Case,* if that was the meaning of the opinion. The court stated that by the common law "punishment to compel restraint was no less private in its character than punishment to compel action. There was, of course, this difference in the result to the contemnor: Where he was imprisoned to compel action he could secure his release by complying with the order of the court, but where he was imprisoned because of past executed wrongful conduct it was beyond his power to secure his release because of the impossibility of undoing that which he had done." After quoting a portion of the *Gompers* opinion, this court said:

"If by this language the federal supreme court intended to declare that where one contumaciously performs an act or pursues a line of conduct in violation of a court order prohibiting the same, thereby indicating a purpose on his part to continue a course of conduct constituting a continuous violation of the rights of a suitor, his imprisonment is not and cannot be remedial, we must most emphatically disagree."

The court goes on to state that if the fact that "the imprisonment is for a definite term, and was induced by a past violation, is merely to be considered as a test by which to determine the character of the punishment, then we assent." The *Rodd Case, supra,* involved an injunction directed against illegal picketing and it was held, (1) that the act could be prosecuted either as a civil or criminal contempt; (2) that contemnor was entitled at the outset to know whether he was being prosecuted civilly or criminally; (3) that the petition did not, as it should, disclose whether the proceeding was civil or criminal in nature, but (4) that defendant had waived this by failing to interpose a timely objection. The trial court having tried the matter as a civil contempt, this court declined to hold that

prejudicial error had resulted. See also *Bowles v. Davidson,* 246 Wis. 242, 16 N. W. (2d) 802.

We conclude: (1) That to constitute civil contempt, the act of disobedience to an injunctional order must tend to defeat, impair, impede, or prejudice the rights or remedies of a party in an action or proceeding pending or triable in such court; (2) that the wilful disobedience of an injunctional order also constitutes a criminal contempt; (3) that civil contempt is not limited to cases of failure to act on the part of contemnor but is maintainable for positive acts in violation of a restraining order where these evidence a purpose or have a tendency to defeat or impair the rights of a party to the action; (4) that the Wisconsin Labor Relations Board may bring contempt proceedings upon a judgment giving effect to its orders; (5) that the board has the representative interest defined in the preamble of ch. 111, Stats., and is injured by acts in violation of a restraining order which affect these interests; (6) it has brought this action for a civil contempt and appellants are adequately notified of the pleader's purpose in this respect.

The only remaining question is whether the positive acts charged to appellants in the petition do tend to defeat, impair, impede, or prejudice the rights or remedies of a party. On this point it is argued that paragraph (3) of the petition simply alleges past acts of disobedience to the restraining order on four specific days; that neither by express allegation nor inference therefrom is there disclosed a purpose on the part of petitioners to continue with the violation of the restraining order. This objection is not well taken. The allegations of the petition are not in the alternative. It is alleged in paragraph 1 that the restraining order was issued on September 9, 1946, and that appellants have "wholly failed and neglected to conform to the provisions of the judgment described in paragraph 1 hereof; that they and each of them have failed, refused, and neglected to cease and desist from the activities and conduct described in paragraph 1 hereof. . . ." Specific

acts of violation by mass picketing, and denial of access, are charged to have occurred on four consecutive days. In paragraph 4 it is alleged that the foregoing acts and omissions were calculated to, and do in fact defeat and impair the rights of petitioner. We consider that the petition sufficiently alleges that since the service of the court's injunctional order there has been a complete and continuous failure on the part of appellants to obey it, and that this course of conduct culminated in the specific acts charged. The latter are not isolated instances of past violation but extend for consecutive days and, taken in connection with the charge that there has been a failure to obey the order from the start, support the conclusion in paragraph 4 that the rights of respondent as a party have been and are being impaired. In view of this, we conclude that the trial court correctly held that the petition stated a cause of action for civil contempt. It is hardly necessary to add that upon the trial the proof and adjudication must satisfy the requisites of a proceeding for civil contempt according to the standards laid down in *Emerson v. Huss, supra.*

*By the Court.*—Order affirmed.

FRITZ, J., took no part.