FERRIS, Plaintiff in error, v. STATE EX REL. MAASS, Defendant in error.

*No. 75–227. Argued January 5, 1977.—Decided February 1, 1977.*
(Also reported in 249 N. W. 2d 789.)

For the plaintiff in error there was a brief by *Bronson C. La Follette,* attorney general, and *Carl L. Ricciardi,* assistant attorney general, and oral argument by *Scott Minter,* assistant attorney general.

For the defendant in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

DAY, J. The question before us is whether an indigent is entitled to court-appointed counsel at public

expense when a state agency (Department of Natural Resources) seeks to enforce its orders through the coercion of imprisonment for contempt. We hold the answer is yes.

After an investigation, the Environmental Protection Division of the Department of Natural Resources (D.N.R.) concluded that Harold Maass (petitioner) owned and operated an unlicensed solid waste disposal site in the town of Ixonia in Jefferson County. On June 29, 1972, petitioner was ordered to submit an application for a license which was to include license fees totaling $200.00 to cover the years 1969 through 1973, a $1,000 surety bond and a copy of a current permit from the town and county. He was given the alternative of closing the salvage yard and removing all salvageable material within thirty days of the order.

On September 20, 1972 the state commenced an action in Dane County circuit court to compel petitioner to pay a statutory fine for noncompliance with the D.N.R. order and to cease all operations at the solid waste disposal site. Petitioner did not answer the complaint. On November 29, 1973, the state moved for judgment by default. Petitioner appeared in person without representation of counsel. The state appeared by an assistant attorney general and judgment was entered the next day wherein petitioner was ordered to remove all salvage material not later than April 1, 1974. The court refused the state's request to impose a forfeiture for noncompliance with the order but retained jurisdiction to do so in the future. On November 11, 1974, petitioner was ordered to show cause why he should not be held in civil contempt of court or in the alternative, why the solid waste disposal site should not be declared a public nuisance as a present and continuing violation of the law and abated or, in the alternative, why petitioner should not be ordered to grant permission to representatives of the

D.N.R. to enter upon his property, remove the solid waste and sell it on the open market, retain sufficient proceeds to cover the cost of removing it and refund the remainder to the petitioner.

A hearing was held on November 22, 1974. Petitioner appeared in person and with his son. The state as plaintiff, appeared by an assistant attorney general. A D.N.R. environmental specialist identified aerial photographs intended to establish noncompliance with the salvage removal order. Petitioner's son asked him how many of the cars in the photograph had licenses and the witness testified he did not know. Petitioner's son testified that his father did not drive and was unable to remove the salvage materials himself and had great difficulty in getting anyone else to do the job. Petitioner testified that he lives alone except for weekend visits by his son, that he does a little trapping, living "from day to day." He also testified, "my nerves are so shot." When asked if he would allow D.N.R. representatives to enter the premises to clean out the junk and sell it, he said no, because he feared wild rabbits living under the cars would be harmed. ". . . I couldn't go back on my rabbits and everything, you know, for my country, you know what I mean."

The court then asked the D.N.R. specialist if there was someone available who could buy the cars where they stand and the specialist testified, "I suppose something could be worked out." At the conclusion of the hearing the court told the petitioner he had thirty days to remove the salvage after which time he would be jailed if he did not. The court also made a finding that the defendant was in contempt. There is nothing in the record to indicate that the petitioner requested the assistance of counsel or that it was offered.

The petitioner began serving an indeterminate period in jail on December 29, 1974. A writ of habeas corpus

was granted by Judge Richard W. Bardwell on January 28, 1975. On February 4, 1975, the circuit court by Judge Bardwell discharged the petitioner. The court found that the petitioner was indigent and entitled to court-appointed counsel prior to his commitment.

The public defender, on behalf of the petitioner, argues that the matter here is governed by the case of *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed.2d 530, 92 S. Ct. 2006 (1972). There the United States Supreme Court held that absent a knowing and intelligent waiver, no person may be imprisoned for any offense whether classified as petty, misdemeanor or a felony unless represented by counsel at his trial. The court held that the rule is required by the sixth amendment to the United States Constitution made applicable to the states by reason of the fourteenth amendment. 407 U.S. 27.

The sixth amendment by its terms applies to criminal prosecutions. The fact that the outcome of the proceeding may result in loss of liberty does not, by itself, mean that the sixth amendment's guarantee of counsel is applicable. *Middendorf v. Henry,* 425 U.S. 25, 96 S. Ct. 1281, 1287, 47 L. Ed.2d 556 (1976). *State ex rel. Hawkins v. Gagnon,* 64 Wis.2d 394, 402, 219 N.W.2d 252 (1974) was a probation revocation case and included the question of the necessity for the appointment of counsel. Our court said:

"Since the administrative revocation proceedings are not a part of criminal proceedings and thus without sixth amendment protection, counsel may be constitutionally required only under the due process clause when necessary to protect his rights to a hearing . . . ."

Imprisonment under civil contempt as here is coercive, whereas imprisonment for criminal contempt is punitive. It has been stated a civil contemnor carries, "the keys of (his) prison in (his) own pockets." *In re Nevitt,*

117 F. 448, 461 (8th Cir. 1902). As the United States Supreme Court said in *Shillitani v. United States,* 384 U.S. 364, 86 S. Ct. 1531, 16 L. Ed.2d 622 (1966) at 368, 369:

"When the petitioners carry the keys of their prison in their own pockets, . . . the action is essentially a civil remedy designed for the benefit of other parties . . . it is not the fact of punishment but rather its character and purpose, that often distinguished civil from criminal contempt . . . ."

The civil contempt procedure in Wisconsin has undergone reform and revision since the petitioner at bar was incarcerated. While this court has reserved its traditional inherent powers in this area, *State ex rel. Attorney General v. Circuit Court for Eau Claire County,* 97 Wis. 1, 8, 72 N.W. 193 (1897); *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385, 386 (1929); *In re Hon. Charles E. Kading,* 70 Wis.2d 508, 517, 235 N.W.2d 409, 238 N.W. 2d 63, 239 N.W.2d 297 (1975); *See,* 1975 Wis. L. Rev. 1117, 1118 notes 8, 9, the differences between civil and criminal contempt are and have been statutorily defined. *See,* Chapter 401, Laws of 1975. However, where the state in the exercise of its police power brings its power to bear on an individual through the use of civil contempt as here and liberty is threatened, we hold that such a person is entitled to counsel. That means that absent a knowing and intelligent waiver of counsel, the court, prior to the hearing on contempt, must advise the alleged contemnor of his right to counsel and advise him that if he is indigent, the court will appoint counsel for him at public expense.

*By the Court.*—Order affirmed.