STATE, Plaintiff-Respondent, v. KING, Executive Director, AFSCME, Council 24, Wisconsin Employees Union, AFL–CIO, and another, Defendants-Appellants: WISCONSIN STATE EMPLOYEES UNION, and others, Defendants. [Case No. 77–176.]

STATE, Plaintiff-Respondent, v. WISCONSIN STATE EMPLOYEES UNION, COUNCIL 24, and others, Defendants-Appellants: KING, Executive Director, AFSCME, and others, Defendants. [Case No. 77–188.]

*Nos. 77–176, 77–188. Argued January 5, 1978.—*
*Decided February 7, 1978.*
(Also reported in 262 N.W.2d 80.)

For appellant Thomas King there were briefs by *Richard V. Graylow* and *Lawton & Cates* of Madison, and oral argument by *Mr. Graylow*. [Case No. 77–176.]

For respondent the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 77–176.]

For appellants, Wisconsin State Employees Union, James Campbell, Norma Chance and Rosalie Randall, there was a brief by *Bruce F. Ehlke* and *Lawton & Cates* of Madison, and oral argument by *Mr. Ehlke*. [Case No. 77–188.]

For the respondent the cause was argued by *John D. Niemsto,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general, as attorneys for State of Wisconsin and Special Counsel to the Circuit Court for Chippewa County. [Case No. 77–188.]

BEILFUSS, C. J.   These two cases arise from a labor dispute between the Wisconsin State Employees Union, Council, 24, representing the state employees, and the State of Wisconsin. The orders appealed from in both cases deal with contempt of court proceedings for the alleged violations of temporary injunctions which required the employees at two state mental health centers to refrain from picketing and to return to work.

The parties in both cases are the State of Wisconsin, the Union, and certain named officers and employees. The issues in both cases are basically the same and for

that reason these issues will be decided in one opinion. For convenience, Case No. 77–176 will be referred to as "Central Center," and Case No. 77–188 as "Northern Center."

Judge BARDWELL, a circuit judge for Dane county, presided over the Central Center case, and Judge PFIFFNER, the circuit judge for Chippewa county, presided over the Northern Center case. Central Center is located in Dane county and Northern Center in Chippewa county. Both institutions are state owned and operated by the State for the care, consultation, training and education for developmentally disabled persons.

Because of an unresolved labor dispute between the State and the Wisconsin State Employees Union, a statewide strike of state employees represented by the Union was called in the summer of 1977.

In both cases, during the strike, the State of Wisconsin commenced civil actions against the Wisconsin State Employees Union and some of its officers and agents. The State sought an injunction restraining the defendants from engaging in or encouraging others to engage in the strike at the two centers. These actions were commenced by the Attorney General at the request of the secretary of the Department of Administration and the Acting Governor.

On July 11, 1977, a temporary injunction was issued in the Central Center action enjoining the defendants from engaging in or encouraging others to engage in the strike. On July 8, 1977, a like temporary injunction was issued in the Northern Center Case.

The employees in both cases ignored the temporary injunction and continued to strike in definance of the injunction.

The strike was settled on July 17, 1977, and the employees returned to work forthwith. On July 20, 1977 the Attorney General received instructions from the secretary of the Department of Administration to com-

promise and discontinue all pending litigation pursuant to a non-recrimination clause agreed to by the Union and the State.

However, earlier in the day, on July 20th, the Attorney General had filed petitions for orders to show cause why the Union and designated employees should not be found in contempt of court for violating the temporary injunction. In the Central Center case the order to show cause was issued and the hearing set for July 28th. In the Northern Center case a like order to show cause was issued and the hearing set for July 27, 1977.

In Central Center the Attorney General filed a notice to dismiss. At the July 28th hearing Judge BARDWELL denied the motion and issued another order to show cause directing the Union to appear on September 12, 1977, in the contempt proceeding. On August 3d the trial court denied a motion by Thomas King, executive director of the Union, to dismiss the action and all proceedings.

The Attorney General was ordered to serve as special counsel for the September 12th hearing. King's subsequent motion to stay was denied. This court granted a temporary stay on August 31, 1977, and on September 8, 1977 King appealed from the various orders of the trial courts.

The proceedings in the Northern Center case were quite similar, but different in some important aspects. The Attorney General and the Union made motions to dismiss—both motions were denied. Judge PFIFFNER announced the contempt hearing would be held and decided to hear the alleged contempt of one of the employees, Norma Chance. Counsel for the Union moved for substitution of judge, which was denied. Judge PFIFFNER then proceeded to hear the matter. He called and examined witnesses and found Norma Chance in contempt of court for her violation of the temporary injunction. A fine of $10 per day for six days was im-

posed. Judge PFIFFNER then ordered the Attorney General to represent the court as special counsel in contempt proceedings against other named individuals.

There is no real challenge to the validity of the orders granting the temporary injunctions. The legislature has said it is an unfair labor practice for state employees to strike,[1]—further, the only employees enjoined were those engaged in what may be regarded as essential services for the mentally disadvantaged at Central Center and Northern Center.

The Union and Norma Chance have appealed from the various orders.

The major issue is whether the court can conduct a civil contempt proceeding after the principal action has been settled.

In general there are two categories of contempt: civil and criminal.[2] In some instances the same conduct can constitute civil or criminal contempt.[3] Several general rules have become well accepted. Usually a contempt action which seeks to vindicate the authority and dignity of the court is a criminal contempt, while a contempt which seeks to enforce a private right of one of the parties in an action is a civil contempt. This distinction is often expressed in the results which flow from the particular

---

[1] "111.84 *Unfair labor practices.* . . . (2) It is unfair practice for an employe individually or in concert with others:

". . .

"(e) To engage in, induce or encourage any employes to engage in a strike, or a concerted refusal to work or perform their usual duties as employes."

[2] There are also direct contempts occurring in the presence of or having an effect upon court proceedings, and indirect contempts occurring outside the presence of the court, but these are not involved here.

[3] See ch. 295, Stats., and secs. 256.03 through 256.07.

finding of contempt. If the order is coercive or remedial, the contempt is civil. If the order is purely punitive, the contempt is criminal.[4]

When invoked to enforce a right of a party the contempt power manifests itself in fines or imprisonment (usually of an indeterminate duration), which can be purged if the party found in contempt obeys the order which led to the contempt. For example, if a party desires information and another party refuses to give it in spite of a court order commanding that he do so, that party may be held in civil contempt.[5]

The fact that civil contempts are remedial or coercive, *i.e.*, designed to force one party to accede to another's demand, is demonstrated by the statutory requirement that the sentences be purgeable.[6] Civil contempt looks to the present and future and the civil contemnor holds the key to his jail confinement by compliance with the order.[7] On the other hand, the criminal contemnor is brought to account for a completed past action, his sentences are not purgeable and are determinate. Criminal contempt is punitive. It is not intended to force the contemnor to do anything for the benefit of another party.[8]

---

[4] *Ferris v. State ex rel. Maass*, 75 Wis.2d 542, 545–46, 249 N.W.2d 789 (1977); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441–42 (1911); *Shillitani v. United States*, 384 U.S. 364, 368–372 (1966); 17 C.J.S., *Contempt*, sec. 5(2).

[5] Note however that in refusing to obey an order for the benefit of a party the contemnor also challenges the authority of the court. Thus an element of criminal contempt is evident in some civil contempts.

[6] *See* Sec. 295.02(4), Stats.

[7] *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902).

[8] On civil and criminal contempt generally, *see:* 1975 Wis. L. Rev. 1117; 9 Wis. L. Rev. 166, 278 (1933–1934); 56 Cornell L. Rev. 235; Goldfarb, *The Contempt Power*, pp. 49–67 (1963).

The distinction between the two forms of contempt is important because most of the constitutionally required bill of rights procedures and due process protections apply only to criminal contempt. With the major exception of contempt committed in the physical presence of the trial court (direct contempt), a criminal contemnor is entitled to, *inter alia*, an unbiased judge, *In re Murchison*, 349 U.S. 133, 137 (1955), *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971); a presumption of innocence until found guilty beyond a reasonable doubt, a right against self-incrimination, *State ex rel. Rodd v. Verage*, 177 Wis. 295, 317, 187 N.W. 830 (1922), *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911); notice of the charges, the right to call witnesses, time to prepare a defense, *Cooke v. United States*, 267 U.S. 517, 537 (1925); and a right to a jury trial if the sentence is for more than six months, *Cheff v. Schnackenberg*, 384 U.S. 373 (1966), *Bloom v. Illinois*, 391 U.S. 194, 210 (1968).[9]

The courts have evidently declined to extend these rights to the civil contemnor, not because he may not serve sentences as long or even longer than those served by a criminal contemnor but on the theory that these rights are unnecessary because he holds the key to his confinement.

In these cases both the parties and both the trial courts agree that the procedures utilized were for civil contempt. In the cases at hand the acts complained of could have been the basis for criminal contempt.[10] Although everyone concerned proclaims this to be a civil contempt, all the indicia of contempt point toward criminal contempt. These cases would have presented no

---

[9] *Also see* sec. 256.03(2), Stats., for nonsummary procedure which provides for most of these constitutional procedures.

[10] Counsel for the appellants conceded this at oral argument.

foreseeable problems if they had been brought as criminal contempt.

On July 17, 1977, the strike by the Wisconsin State Employees Union against the State was settled. On July 20, 1977, the Attorney General petitioned the circuit courts for Dane and Chippewa counties to find the Union in contempt. Therefore at the time the contempt proceeding was commenced it was impossible to use it as a tool to enforce the injunction. If the strike had still been ongoing the contempt power could have been used for a coercive or remedial end, namely to get the workers at the Central and Northern Centers back on their jobs. However, by July 20th the strike had been settled, the workers were back on their jobs, and coercive or remedial action could serve no purpose at that time. The only purpose for a contempt action brought at the time the contempt was sought in these cases was punishment to vindicate the authority of the court.

In *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418 (1911), the United States Supreme Court held that settlement of the underlying controversy required dismissal of civil contempt grounded in that controversy. Thus, under this rule, civil contempt begun before or, as here, after the settlement of the underlying dispute, is moot because it cannot achieve a coercive or remedial effect.[11]

The State argues that *Gompers* may be distinguished. It cites the following language from *Gompers:*

"When the main case was settled, every proceeding which was dependent upon it, or a part of it, was also necessarily settled—of course without prejudice to the

[11] *See also, New Jersey Zinc Co. v. Local 890 of International Union,* 57 N. Mex. 617, 261 P.2d 648, 653 (1953); *Florida Power & Light Co. v. International Brotherhood of Electrical Workers,* 307 So.2d 189, 193 (Fla. App. 1975).

power and right of the court to punish for contempt by proper proceedings." 221 U.S. at 451.

The State contends that this contempt proceeding is in fact the "proper proceeding" referred to in *Gompers;* that it is a separate and independent proceeding prosecuted by the court on its own motion. The State, however, neglects to include the next sentence from *Gompers*, which provides:

"If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court . . . it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation." 221 U.S. at 451.

The separate proceeding referred to in *Gompers* is one in criminal contempt, not civil contempt as a supplementary proceeding in a civil action.

The State's next response goes to the heart of the issue—Wisconsin has explicitly rejected the *Gompers* holding. *Wisconsin E. R. Board v. Allis-Chalmers Workers' Union*, 249 Wis. 590, 599, 25 N.W.2d 425 (1946) ; *State ex rel. Rodd v. Verage*, 177 Wis. 295, 312–13, 187 N.W. 830 (1922). In doing so Wisconsin has created a unique third category of contempt—civil contempt with punitive sanctions.

In the *Rodd Case* the contemnor in a civil contempt was given a four month sentence with no opportunity to purge. In spite of the fact that the contemnor did not hold the keys to the jail as is normally required in civil contempt, the court held that the result was permissible in a civil contempt proceeding:

"So we arrive at the conclusion that where a court in order to protect private rights issues its order restraining the commission of certain acts, and it subsequently is made to appear to the court that one has committed the acts prohibited under circumstances which indicate

a purpose on his part to disregard the order of the court and to continue in the performance of the acts prohibited, and that such continued conduct will injuriously affect the rights of a party to the action, the court may, as a remedial measure civil in character and for the purpose of preventing further injury to a suitor, imprison the contemnor; and especially is that so when the court is moved to action on the application of the aggrieved party. The dominant character of the imprisonment is remedial and coercive, although a punitive effect may also result." 177 Wis. at 314.

On its language alone the *Rodd Case* is distinguishable because there is at least a colorable claim in it that the imprisonment is remedial and coercive in that there was a likelihood of continued violation of the court's order. But in these cases the orders—the injunctions—have become ineffectual because the parties have settled. Any sentence here, purgeable or not, cannot be remedial because there is no threat nor possibility of continued violation. Any sentence here can only be punitive.

However, language in other cases dealing with this third category of contempt indicates that this court has permitted the imposition of punitive sanctions in civil contempt which have no remedial or coercive attributes. *Emerson v. Huss*, 127 Wis. 215, 106 N.W. 518 (1906); *Wisconsin E. R. Board v. Mews*, 29 Wis.2d 44, 138 N.W. 2d 147 (1965).[12]

If we adhere to the continued existence of this third category then the circuit courts should be affirmed. On the other hand, if the court accepts the Union's position and eliminates this category, then the State may still proceed in contempt but must do so in a new, criminal proceeding. We conclude that the latter course is preferable.

In support of this position is the fact that the legislature no longer recognizes punitive sanctions for civil

---

[12] *See also* Maloney, *Civil and Criminal Contempt in Wisconsin,* 8 Continuing Legal Education 87 (1968).

contempt. Sec. 295.02(5), Stats. (1975), effective June 14, 1976, provides that no person shall be fined or imprisoned for civil contempt except as specified in subs. (1) and (2) which concern remedial and coercive measures and do not mention punitive actions.[13]

[13] "295.02 *Sanctions.* Every court of record may, in the exercise of its equitable powers, enforce the rights or remedies of a party to an action or proceeding by imposing on any person found in contempt under s. 295.01 the following sanctions:

"(1)(a) If an actual loss or injury has been produced to any party by the misconduct of the contemnor, which it is not efficacious to remedy by execution or garnishment, the court may order the defendant to pay such party a sum sufficient to compensate the party for losses, costs and expenses, and in such case the payment and acceptance of such a sum shall be an absolute bar to any action by the aggrieved party to recover damages in another action for such injury or loss.

"(b) This subsection does not apply to an actual loss or injury arising out of a debt founded in contract or for a tort that is dischargeable in bankruptcy.

"(2) (a) If the misconduct proved consists of an omission to perform some act or duty which it is yet in the power of a party to perform in part or in full, including a failure to indemnify another party under sub. (1), the party or, if applicable, the executive officer of a corporation or association may be imprisoned until the party or officer performs such act or duty and pays the costs and expenses of the proceedings.

"(b) If the misconduct of the party under par. (a) also constitutes a violation of another statute, the injunction may specify the amount of forfeiture to be payable to the common school fund under s. 25.21 for each day of violation in the future.

"(3) Sanctions imposed under this section may not exceed the following maximums:

"(a) No requirement to pay money under sub. (1) may exceed a sum sufficient to compensate an aggrieved party for actual losses, costs and expenses.

"(b) No person may be imprisoned under sub. (2)(a) for more than 6 months on the basis of any single finding of contempt.

"(c) No forfeiture under sub. (2) may exceed $2,000 for each day of violation.

"(4) A person imprisoned shall be released upon purging by compliance with the court's order.

The courts of this state and those of many other jurisdictions have long held that they possess an inherent contempt power over their branch of the government to maintain decorum and see that their orders are carried out. *State ex rel. Rodd v. Verage,* 177 Wis. 295, 305–06, 187 N.W. 830 (1922); *In re Hon. Chas. E. Kading,* 70 Wis.2d 508, 543b, 235 N.W.2d 409, 238 N.W. 2d 63, 239 N.W.2d 297 (1975); *Ferris v. State ex rel. Maass,* 75 Wis.2d 542, 546, 249 N.W.2d 789 (1977); *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 226–27 (1821); *Doyle v. London Guarantee Co.,* 204 U.S. 599, 607 (1907).

However, this court has just as consistently held that this power is subject to reasonable legislative regulation:

"Doubtless, this power may be regulated, and the manner of its exercise prescribed, by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal." *State ex rel. Attorney General v. Circuit Court for Eau Claire County,* 97 Wis. 1, 8, 72 N.W. 193 (1897). *See also, Upper Lakes Shipping v. Seafarers I. Union,* 22 Wis.2d 7, 17, 125 N.W.2d 324 (1963).

The Union cites the following language from a recent case in support of its claim that punitive sanctions are no longer allowed:

"While this court has reserved its traditional inherent powers in this area. . . . the difference between civil and criminal contempt are and have been statutorily defined." *Ferris v. State ex rel. Maass, supra,* 75 Wis. 2d at 546.

---

"(5) No person may be imprisoned, nor required to pay any sum of money to the court or to a party, under this chapter except as specified in subs. (1) and (2).

"(6) Nothing in this section may prohibit the court from imposing punishment of fine or imprisonment for criminal contempt under ss. 256.03 to 256.07."

This language falls far short of indicating any abdication of the court's inherent powers. We believe the legislative prohibition of punitive civil contempt is a reasonable regulation and should be followed.

Punitive sanctions in civil contempt are contrary to the well recognized opposite natures of civil and criminal contempt. As this court recently stated: "Imprisonment under civil contempt . . . is coercive, whereas imprisonment for criminal contempt is punitive." *Ferris, supra,* 75 Wis. at 545. We now conclude those cases which hold that courts in civil contempt may impose purely punitive sanctions are anomalies and should no longer be considered authority.

This holding will produce uniformity in the Wisconsin decisions which have seen the court declare in the *Rodd Case* that civil contempt may be punitive, while three years later the same court stated:

"While the proceeding is denominated a civil contempt and the procedure is that prescribed by ch. 295, nevertheless it was in the nature of a proceeding for criminal contempt. . . . The real character of the proceeding is to be determined by the relief sought. The relief sought here was not to enforce a private right but to punish the contemnor for a past offense." *Wetzler v. Glassner,* 185 Wis. 593, 595–96, 201 N.W. 740 (1925).

Another reason for supporting this distinction is as noted above—criminal contemnors have the benefit of a multitude of constitutional procedural rights. The reason that civil contemnors do not possess the same rights is that they hold the keys to their own jails. A civil contemnor in Wisconsin who is fined or imprisoned for purely punitive reasons and does not have the ability to purge probably can make a good case for reversal on the grounds that he is entitled to the constitutional safeguards of the criminal contempt procedure.

The ultimate question in this case is whether the authority and dignity of the circuit courts for Dane and Chippewa counties can be vindicated if the concept of civil contempt with purely punitive sanctions is rejected. Sec. 295.02(6), Stats., declares that:

"Nothing in this section may prohibit the court from imposing punishment of fine or imprisonment for criminal contempt under ss. 256.03 to 256.07."

Although the procedure required in criminal contempt is much more cumbersome, costly and time-consuming, it is not the policy of the law to choose expediency over due process when it should be afforded.

We conclude in the cases before us that the remedy of civil contempt expired when the actions were settled and the parties moved to dismiss the actions. It follows therefore that the civil contempt proceedings in both cases must be dismissed.

Because we have concluded the civil contempt proceedings must be dismissed, the other issues raised in these appeals are not considered.

*By the Court.*—Orders reversed and remanded for proceedings not inconsistent with the opinion. No costs to be taxed.