Carol SCHROEDER, Plaintiff-Respondent,

v.

Charles SCHROEDER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–1018. Argued February 2, 1981.—Decided March 3, 1981.*

(Also reported in 302 N.W.2d 475.)

For the petitioner there was a brief and oral argument by *L. William Connolly* of Milwaukee.

For the plaintiff-respondent there was a brief and oral argument by *Robert J. LaBelle* of Oconomowoc.

STEINMETZ, J. This case first entered the Wisconsin court system in 1974 in an action for divorce. On November 22, 1974, the parties were granted a divorce decree in Waukesha county with the entry of a judgment incorporating the provisions of the parties' stipulation. The equity in the home of the parties was divided and the judgment provided that the defendant-appellant (Charles) pay the plaintiff-respondent (Carol) the sum of $9,000 by way of division of the estate. The judgment also provided for the payment of support for the minor children. It further provided that Carol was to convey her interest in the jointly owned real estate to Charles upon receipt of payment in full of the $9,000.

Carol was granted custody of the three minor children of the marriage, one of whom is now an adult. Charles was ordered to pay support for the children in the amount of $40 per week commencing December 2, 1974. He did not pay the ordered support money, and on March 15, 1978, the court ordered it reduced to $15 per week starting March 20, 1978, upon Charles' claim that he was unemployed. That order was to be reviewed in six months, but this was not done.

Charles, pursuant to the court judgment, did pay $5,000 of the $9,000 figure within 60 days of the original order. He has not paid the remaining $4,000 which was to be paid at the rate of $1,000 on January 2 of each year, commencing on the 2nd day of January, 1976, until paid in full.

Since the divorce judgment was entered in 1974, there have been 17 or 18 motions filed by Carol, nearly all due to defendant's violations of court orders.

As a result of one of the numerous hearings, the Honorable Robert T. McGraw on September 22, 1978, signed an order finding the defendant in contempt by virtue of his failure to pay the $1,000 payments due on January 2, 1976, 1977 and 1978. The sanction imposed was to

direct those sums be placed as a lien upon the interest of the defendant in the jointly owned property. Also, the arrearage for support at that time in the amount of $6,960 was placed as a lien against the defendant's interest in the property.

The next finding of defendant's contempt was June 13, 1979, as a result of an order signed by Reserve Judge Francis H. Wendt based on his decision on May 8, 1979. Judge Wendt had conducted a two-day hearing on January 31 and February 1, 1979, which resulted in his decision.

Judge Wendt's order found the defendant in contempt of court since December 2, 1974, when the first support payment was due. Arrearage according to this order was found to be $7,115 as of April 16, 1979.

Judge Wendt also found the defendant in contempt of court for not abiding by the judgment of divorce as to division of the estate.

Reference in the order was made to Judge McGraw's hearing and findings of June 19, 1978, finding the defendant in contempt.

In his decision, Judge Wendt found the defendant had sufficient financial ability to pay all moneys due on the division of the estate. He made no finding of the defendant's financial ability to pay the support order nor to pay the medical and dental bills. Judges do not have the luxury of stating conclusions without stating the findings allowed by the proof on which they are based.

Upon the finding of contempt, Judge Wendt did not impose any remedial sanction except in his decision he stated, "Plaintiff's attorney may apply for a capias at any time upon notice." This phrase with whatever value it had was not included in the judge's order.

The next application of the courts to this continuing saga was on July 3, 1979, when Judge McGraw signed

an order resulting from an order to show cause hearing on June 25, 1979, which was adjourned to July 2, 1979. The order recited the plaintiff and her attorney and defendant and his attorney were present at the hearing. No record was made of that hearing, or at least the appellate file does not contain any record of the proceedings. Judge McGraw found the defendant in contempt of court and sentenced him forthwith to serve 60 days in the Waukesha county jail. He was forthwith remanded to the custody of the sheriff of Waukesha county. In this same order the defendant was given an opportunity, through his attorney, to submit to the court within ten days "a proposal by which the defendant may purge himself of contempt." (Judge McGraw's July 3, 1979, order, Exhibit JJ of the trial court record.)

In the court of appeals, the defendant contended the order of Judge McGraw should be reversed for the following reasons: (1) the contempt proceedings actually constituted criminal contempt, and (2) the contempt proceedings do not lie to enforce the provisions of a divorce judgment debt.[1]

The court of appeals affirmed the trial court after a discussion of criminal versus civil contempt and found this contempt finding was civil and the jail sentence was within the authority of Judge McGraw to impose.

## CONTEMPT PROCEEDINGS TO ENFORCE A DIVORCE JUDGMENT

Enforcement of divorce judgments by contempt proceedings is provided for in sec. 247.305, Stats. 1977. This statute became law as ch. 105, sec. 47 of the Laws of 1977. Sec. 62 of the same chapter provides:

---

[1] *Schroeder v. Schroeder*, 95 Wis.2d 415, 290 N.W.2d 548 (Ct. App. 1980).

"SECTION 62. *Effective date.* (1) This act applies to all actions affecting marriage, and to all actions for modification or enforcement of previously entered orders in actions affecting marriage, which are commenced on and after the effective date of this act.

"(2) This act shall take effect on the first day of the 4th month after its publication."

The chapter was published on October 15, 1977. Sec. 247.305, Stats., became effective, therefore, on February 1, 1978. Even though the judgment of divorce in the present case was granted on November 22, 1974, the contempt proceedings which are the basis of this action were begun late in 1978 and led to a finding of contempt on May 8, 1979. The order for incarceration was based on this finding. Thus, the order at issue arises from an action for the enforcement of an order affecting marriage which was commenced after the effective date of sec. 247.305. Sec. 247.305, Stats. 1977, applies to this case.

█ Sec. 247.305, Stats. 1977, provided:

"247.305 **Enforcement; contempt proceedings.** In all cases where a party has incurred a financial obligation under s. 247.25, 247.255, 247.26, 247.261 or 247.262 and has failed within a reasonable time or as ordered by the court to satisfy such obligation, and where the wage assignment proceeding under s. 247.265 is inapplicable, impractical or unfeasible, the court may on its own initiative, and shall on the application of the receiving party, issue an order requiring the payer to show cause at some reasonable time therein specified why he or she should not be punished for such misconduct as provided in s. 295.02."

Contempt proceedings of ch. 295 are therefore appropriate for all failures to obey orders of the court as to:

"Sec. 247.25 **Child support**"
"Sec. 247.255 **Property division**"
"Sec. 247.26 **Maintenance payments**"
"Sec. 247.261 **Family support**"
"Sec. 247.262 **Award of attorney's fees**"

There is a requirement in sec. 247.305, Stats. 1977, that the court consider in the contempt order to show cause whether the wage assignment proceeding under sec. 247.265 is inapplicable, impractical or unfeasible. There is no requirement in the statute that there be a separate wage assignment hearing under sec. 247.265 as a condition precedent to a contempt hearing under sec. 295.02. However, in signing the order to show cause for contempt, the judge should and must consider whether a separate and preliminary hearing pursuant to sec. 247.-265 is applicable, practical or feasible and if the judge rules out the necessity to conduct that separate hearing, the order to show cause or resulting order should recite that determination.

To do otherwise would increase the number of appearances, the expenses to the litigants and unnecessary time of the courts. The legislature could not have meant there had to be a wage assignment hearing as to whether it should be exercised as a condition precedent to a contempt hearing since sec. 247.305, Stats. 1977, states that upon failure to satisfy an obligation as ordered by the court in a reasonable time and the wage assignment provisions of sec. 247.265 being inapplicable, impractical or unfeasible, then a hearing under sec. 295.02 may be ordered. However, the legislature has also defined statutorily that every court of record may find in contempt any person "who disobeys any process or lawful order of the court . . . by which act the rights or remedies of a party in an action or proceeding pending or triable in such court or before the same county may be impaired, impeded, defeated or prejudiced." Sec. 295.01 defines the judges' authority to act in divorce proceedings in addition to sec. 247.305. Judges presiding in actions affecting marriage have no less power than judges presiding in other actions. It is clear that support payment, division of estate and

maintenance orders issued by a court affect the rights and remedies of a party in an action and the judge is authorized and has the duty to assure those rights and remedies will not be impaired, impeded, defeated or prejudiced.

The legislature in its wisdom has given another authority to the courts in addition to recognizing contempt powers by stating the additional method of wage assignment to assure the enforcement of court orders in actions affecting marriage.

One of the arguments advanced by the defendant is that where a part of a divorce judgment is not paid, it may be reached by execution, and then contempt proceedings will not lie. That was the law of *Zuehls v. Zuehls,* 227 Wis. 473, 278 N.W. 880 (1938).[2] However, that decision was based on sec. 295.01(3), Stats. 1935. This section is no longer a part of the statute and *Zuehls v. Zuehls* therefore is no longer the law in this state.

## CIVIL AND CRIMINAL CONTEMPTS

The authority of courts in the use of contempt procedures, civil and criminal, are awesome and complete. The most relevant statutory authority is at ch. 295, Stats. 1977,[3] for civil contempts and secs. 757.03 through 757.-

---

[2] " 'Parties to actions, attorneys, counselors and all other persons for the nonpayment of any sum of money ordered by such court to be paid in cases where by law executions cannot be awarded for the collection of such sum; and for any other disobedience to any lawful order, judgment or process of such court. And the powers of such court to punish, as in this chapter provided, for nonpayment of money may be exercised by the judge or judges thereof in vacation.' " *Zuehls v. Zuehls, supra,* at 476.

[3] Chapter 295, Stats. 1977, provides:

"295.01 **Contempt power of courts.** Every court of record may find in contempt any person who disobeys any process or lawful order of the court, violates or neglects an official duty, or is otherwise guilty of misconduct, by which act the rights or remedies of a

07, Stats. 1977,[4] for criminal contempts. Ch. 295 was amended and renumbered and is now ch. 785.

party in an action or proceeding pending or triable in such court or before a court commissioner for the same county may be impaired, impeded, defeated or prejudiced.

"295.02 Sanctions. Every court of record may, in the exercise of its equitable powers, enforce the rights or remedies of a party to an action or proceeding by imposing on any person found in contempt under s. 295.01 the following sanctions:

"(1) (a) If an actual loss or injury has been produced to any party by the misconduct of the contemnor, which it is not efficacious to remedy by execution or garnishment, the court may order the defendant to pay such party a sum sufficient to compensate the party for losses, costs and expenses, and in such case the payment and acceptance of such a sum shall be an absolute bar to any action by the aggrieved party to recover damages in another action for such injury or loss.

"(b) This subsection does not apply to an actual loss or injury arising out of a debt founded in contract or for a tort that is dischargeable in bankruptcy.

"(2) (a) If the misconduct proved consists of an omission to perform some act or duty which it is yet in the power of a party to perform in part or in full, including a failure to indemnify another party under sub. (1), the party or, if applicable, the executive officer of a corporation or association may be imprisoned until the party or officer performs such act or duty and pays the costs and expenses of the proceedings.

"(b) If the misconduct of the party under par. (a) also constitutes a violation of another statute, the injunction may specify the amount of forfeiture to be payable to the common school fund under s. 25.21 for each day of violation in the future.

"(3) Sanctions imposed under this section may not exceed the following maximums:

"(a) No requirement to pay money under sub. (1) may exceed a sum sufficient to compensate an aggrieved party for actual losses, costs and expenses.

"(b) No person may be imprisoned under sub. (2)(a) for more than 6 months on the basis of any single finding of contempt.

"(c) No forfeiture under sub. (2) may exceed $2,000 for each day of violation.

"(4) A person imprisoned shall be released upon purging by compliance with the court's order.

This court in *State v. King*, 82 Wis.2d 124, 136, 262 N.W.2d 80 (1978), stated:

"(5) No person may be imprisoned, nor required to pay any sum of money to the court or to a party, under this chapter except as specified in subs. (1) and (2).

"(6) Nothing in this section may prohibit the court from imposing punishment of fine or imprisonment for criminal contempt under ss. 757.03 to 757.07.

"295.03 **Procedure in civil contempts.** (1) Upon a verified petition alleging misconduct under s. 295.01, the judge in the principal action, or another judge if the original judge is unable to act, may take jurisdiction of the special proceeding of contempt and issue any necessary process, including but not limited to an order to show cause, an attachment to arrest which shall state whether or not the defendant may post cash bail in a given amount or a property bond to assure attendance at court or a writ of habeas corpus if the defendant is in custody.

"(2) The party prosecuting any person for contempt under this chapter shall be required to prove by a preponderance of the evidence that such person is guilty of misconduct under s. 295.01, and has by that misconduct impeded, impaired, defeated or prejudiced a right or remedy of such party.

"(3) Any person charged with contempt under this chapter may plead by answer affirmative defenses to the charge, including but not limited to inability to comply with an order or decree of the court. The defendant setting forth such a defense shall have the burden of proving such defense by a preponderance of the evidence.

"295.04 **When court may act.** The judge of any court of record may make findings of contempt, impose sanctions and carry out all contempt proceedings under this chapter regardless of whether the court is in session, in adjournment or between sessions."

[4] "757.03 **What acts may be punished as criminal contempts.** Every court of record shall have power to punish, as for a criminal contempt, persons guilty of either of the following acts and no other:

"(1) Any breach of the peace, noise, disturbance or other disorderly or insolent behavior committed in its immediate view and presence, in court or chambers, which directly tends to interrupt its proceedings or to impair the respect due its authority.

"(2) Wilful and intentional disobedience or obstruction of, or resistance to any process or order lawfully issued or made by it.

"The courts of this state and those of many other jurisdictions have long held that they possess an inherent

"(3) Wilful refusal to be sworn as a witness or, when so sworn, the wilful refusal to answer any legal or proper question when the refusal is not legally justified.

"(4) Wilful, intentional and contumacious misconduct on the basis of which the court could make a finding of civil contempt under s. 295.01, which challenges and impugns the authority of the court.

"757.04  **Procedure in criminal contempts.**  (1) SUMMARY PROCEDURE.  (a) A criminal contempt may be punished summarily if the judge certifies on the record that the judge has seen or heard the conduct constituting the contempt and that it was committed in the immediate view and presence of the court.

"(b) If, in the situation described in par. (a), the court has become personally embroiled with the alleged contemnor or has been attacked in such a way that the personal feelings of the judge could reasonably be expected to have been affected, or has adopted an adversary posture with regard to the alleged contemnor, the court may then employ the summary contempt procedure only immediately after the allegedly contemptuous behavior has taken place, if necessary to preserve the order of the court and protect the authority of the court.

"(2) NONSUMMARY PROCEDURE.  (a) In all contempt situations other than those described in sub. (1), there shall be a nonsummary procedure conducted by a different judge, unless the defendant consents to the same judge.

"(b) A nonsummary criminal contempt shall be prosecuted on notice.  Such proceeding shall be prosecuted by the district attorney, the attorney general or an attorney specially appointed by the court for that purpose.  On a verified petition setting forth the essential facts constituting the criminal contempt charged and described as such, on information and belief, the court may take jurisdiction of the special proceeding of criminal contempt and issue the necessary process of order to show cause or warrant for arrest.  The defendant is entitled to a reasonable time for the preparation of the defense, right to bail, substitution of judge, and is presumed innocent until proven guilty beyond a reasonable doubt to the satisfaction of all jurors.  Upon a verdict or finding of guilty the court shall sign and enter of record an order reciting the facts and fixing the punishment.

"757.05  **Pardon for criminal contempt.**  Upon receiving proper application under ss. 57.08 to 57.10, the governor may pardon any person convicted of a criminal contempt.

contempt power over their branch of the government to maintain decorum and see that their orders are carried out. *State ex rel. Rodd v. Verage,* 177 Wis. 295, 305–06, 187 N.W. 830 (1922); *In re Hon. Chas. E. Kading,* 70 Wis.2d 508, 543b, 235 N.W.2d 409, 238 N.W.2d 63, 239 N.W.2d 297 (1975); *Ferris v. State ex rel. Maass,* 75 Wis.2d 542, 546, 249 N.W.2d 789 (1977); *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 226–27 (1821); *Doyle v. London Guarantee Co.,* 204 U.S. 599, 607 (1907).

"However, this court has just as consistently held that this power is subject to reasonable legislative regulation:

" 'Doubtless, this power may be regulated, and the manner of its exercise prescribed, by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribu-

---

"757.06 **Punishment for criminal contempt.** Punishment for criminal contempt under this chapter may be by fine or imprisonment in the jail of the county where the court is sitting, or both, but in no case may exceed the following:

"(1) For each offense adjudicated under the summary procedures of s. 757.04(1), a fine of not more than $500 or imprisonment for not more than 30 days or both. When any person is committed to jail for the nonpayment of any fine under this subsection, the person shall be discharged at the end of 30 days.

"(2) For each offense adjudicated under the nonsummary procedures of s. 757.04(2) for past acts, a fine of not more than $5,000 or imprisonment for a period not to exceed one year, or both; and to enforce any continuing order of the court for future acts, a fine of not more than $1,000 for each day of violation, subject to purge by the defendant's timely compliance with the future acts required under such continuing order.

"(3) Fines collected under this section may not be applied for the benefit of any party in a civil proceeding.

"757.07 **Criminal prosecution for contempt.** Persons found in contempt under s. 757.03 shall be liable to complaint, indictment or information for any offense committed by the same act which was found to be a criminal contempt. The court before which a conviction may be had on such complaint, indictment or information shall, in sentencing, take into account the punishment inflicted under s. 757.06."

nal.' *State ex rel. Attorney General v. Circuit Court for Eau Claire County,* 97 Wis. 1, 8, 72 N.W. 193 (1897). *See also, Upper Lakes Shipping v. Seafarers I. Union,* 22 Wis.2d 7, 17, 125 N.W.2d 324 (1963)." *State v. King, supra,* at 136.

The definitions and distinctions of the two categories of contempt are found at pages 129–31 of the *King* case:

"In some instances the same conduct can constitute civil or criminal contempt. Several general rules have become well accepted. Usually a contempt action which seeks to vindicate the authority and dignity of the court is a criminal contempt, while a contempt which seeks to enforce a private right of one of the parties in an action is a civil contempt. This distinction is often expressed in the results which flow from the particular finding of contempt. If the order is coercive or remedial, the contempt is civil. If the order is purely punitive, the contempt is criminal.

". . . .

"The fact that civil contempts are remedial or coercive, *i.e.,* designed to force one party to accede to another's demand, is demonstrated by the statutory requirement that the sentences be purgeable. Civil contempt looks to the present and future and the civil contemnor holds the key to his jail confinement by compliance with the order. On the other hand, the criminal contemnor is brought to account for a completed past action, his sentences are not purgeable and are determinate. Criminal contempt is punitive. It is not intended to force the contemnor to do anything for the benefit of another party.

"The distinction between the two forms of contempt is important because most of the constitutionally required bill of rights procedures and due process protections apply only to criminal contempt. With the major exception of contempt committed in the physical presence of the trial court (direct contempt), a criminal contemnor is entitled to, *inter alia,* an unbiased judge, *In re Murchison,* 349 U.S. 133, 137 (1955), *Mayberry v. Pennsylvania,* 400 U.S. 455 (1971); a presumption of innocence until found guilty beyond a reasonable doubt, a right against self-incrimination, *State ex rel. Rodd v. Verage,* 177 Wis. 295,

317, 187 N.W. 830 (1922). *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911) ; notice of the charges, the right to call witnesses, time to prepare a defense, *Cooke v. United States*, 267 U.S. 517, 537 (1925) ; and a right to a jury trial if the sentence is for more than six months, *Cheff v. Schnackenberg*, 384 U.S. 373 (1966), *Bloom v. Illinois*, 391 U.S. 194, 210 (1968)." (Footnotes omitted.)

For a finding of civil contempt, " '. . . it is essential in contempt cases that the thing ordered to be done be within the power of the person.' " *Getka v. Lader*, 71 Wis.2d 237, 247, 238 N.W.2d 87 (1976), citing *In re Adam's Rib, Inc. (Kaminsky)*, 39 Wis.2d 741, 746, 159 N.W.2d 643 (1968).

Applying these rules to the instant case, it is apparent that Judge McGraw's order of September 22, 1978, found the defendant in contempt, but his application was to establish liens against the jointly held real estate. Judge Wendt's order of June 13, 1979, found the defendant had the financial ability to obey the division of property order but did not make a finding of the defendant's ability to pay the support arrearage and then authorized a capias upon notice in his decision. That in reality only authorized the bringing of another motion, since notice was required. Judge Wendt did not impose any sentence of any kind.

Finally, Judge McGraw's order of July 3, 1979, imposed a 60 day sentence but didn't inform the defendant what he had to do to purge himself. Neither judge ever made a finding of the defendant's ability to pay support, past, present or future.

It was not sufficient or authorized to order that the defendant may through his counsel submit to the court within ten days, a proposal by which the defendant may purge himself of contempt.

■ The power of contempt does not allow the judge to bargain. The judge has the authority, if the record allows, to impose a sentence of incarceration of not more than six months for civil contempt, but the judge must clearly spell out for the contemnor what he or she must do to be purged.

■ The sentence in a civil contempt is not to punish for not obeying the court's orders, but rather to enforce the private right of one of the parties in the action. Here it is the plaintiff's private rights that the purgeable contempt is to enforce.

The rights of this plaintiff which have not been enforced since 1974, the year of the divorce, are:

(1) $4,000 due on the estate division;

(2) over $7,000 of past support due;

(3) payment of medical and dental bills for defendant's children;

(4) reimbursement for over $4,725 paid by her in mortgage payments to avoid foreclosure on the jointly owned real estate;

(5) to receive dollars when due which had a greater value than current dollars;

(6) that she has not had the benefit of the money or interest on the $4,000 as it was due her.

■ We remand this case to the trial court to enter findings and issue an order based on the record stating what the defendant has failed to do with specificity which leads to the civil contempt finding; whether the defendant has been and is financially able to do what he was ordered to do causing his actions to be contumacious; what sentence is imposed and what must the defendant do to purge himself. If additional evidence or testimony is necessary to arrive at appropriate findings on which to

base conclusions and resulting orders, then the hearing should be continued and completed.

"The question of whether or not the act is contumacious is one which the trial court has far better opportunity to determine than this court." *Staples v. Staples,* 87 Wis. 592, 596, 58 N.W. 1036 (1894). This is old but still valid law.

In the *Staples* case, the court also held:

"It is true that the remedy is severe and harsh. Imprisonment certainly should not be ordered when it appears that the default is the result of honest inability to pay, on account of business misfortunes, or lack of health or earning ability, or other circumstances which are not the fault of defendant. But where the inability is wilfully brought about by defendant himself, with intent to avoid payment, the refusal to pay becomes contumacious, and the inability so resulting will not purge the defendant of contempt."

The script was the same in 1894, only the actors have changed.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the trial court with instructions to act consistent with this opinion.