IN RE the PATERNITY OF CY C. J.:

DIANE K. J., Petitioner-Respondent,

WALWORTH COUNTY CHILD SUPPORT AGENCY,
Respondent,

v.

JAMES L. J., Respondent-Appellant.

Court of Appeals

*No. 94–3375. Submitted on briefs August 22, 1995.—Decided
September 20, 1995.*

(Also reported in 539 N.W.2d 703.)

964

On behalf of the respondent-appellant, the cause was submitted on the brief of *James L. Johnson*, pro se, of Whitewater.

On behalf of the respondent, Walworth County Child Support Agency, the cause was submitted on the brief of *Gary Rehfeldt* of Elkhorn.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J.   Between February 1993 and August 1994 the trial court found James L.J. in contempt six times because he failed to meet child support obliga-

tions. In September 1994, the trial court again found James in contempt, but this time ordered him to serve six months in jail. He appeals claiming that the court erred because it failed to provide him with a means to purge himself of this sanction. We agree.

This appeal tangentially arises out of a paternity action instigated against James in 1985. After he was determined to be the father of Cy C.J., the trial court imposed the original support order in 1986. In 1989, James and Diane K.J. stipulated to joint custody, but continued to haggle over the specific terms of the related support agreement.

James was twice found in contempt for failing to make support payments in 1989 and 1991.[1] Then in February 1993, after more litigation over the support and visitation orders, James was again found in contempt. He eventually complied with the trial court's orders and brought his support obligations current. Still, over the next year and a half the court found James in contempt on six separate occasions after being advised by the Walworth County Child Support Agency that he had failed to make payments. Each time James would not pay the support until a warrant was issued; moreover, on four of these occasions, James waited until he was jailed before making the appropriate payment.

The last in this series of warrants, issued in September 1994, ordered the county sheriff:

> [T]o commit [James] to the Walworth County Jail, under the Huber Law, there to remain for a term or

---

[1] James has previously appealed rulings on substantive aspects of the original placement and support orders. *See Diane K.J. v. James L.J.*, No. 93-2690, unpublished slip op. (Wis. Ct. App. Apr. 12, 1995).

period of six months, or until further order of the court.

Unlike the previous six orders of contempt, there was no provision enabling James to free himself by paying the back support.[2] The court's failure to provide him with the "keys to the jail" forms the basis of his appeal.

■

His argument is simple. James claims that the court misused its discretion when it issued a punitive sanction in a remedial contempt proceeding. This involves a question of law which we review de novo. *See State ex rel. Larsen v. Larsen,* 165 Wis. 2d 679, 682-83, 478 N.W.2d 18, 19 (1992).

■

The answer to James's argument rests on an understanding of the sometimes subtle distinction between remedial (civil) and punitive (criminal) contempt.[3] Remedial contempt is imposed to ensure compliance with court orders. *See* § 785.01(3), STATS.;

---

[2] For example, the order issued in February 1993 provided in relevant part:

> [James] be and hereby is committed to the Walworth County Jail, under the Huber law, for a period not to exceed six months, or until he purges himself of contempt.
>
> . . .
>
> [James] may purge himself of his contempt by the following:
>
> a. Pay $500.00 to the arrears by July 22, 1993;
> b. Make regular and timely payments for a period of twelve (12) months commencing April 1, 1993; and
> c. Pay service fees of $49.50 by April 22, 1993.

[3] For further discussion and additional authority regarding this issue, see Marna M. Tess-Mattner, Comment, *Contempt of Court: Wisconsin's Erasure of the Blurred Distinction Between Civil and Criminal Contempt,* 66 MARQ. L. REV. 369, 375-80 (1983); Steven M. Gloe, Comment *Contempt of Court: Some*

*State v. King,* 82 Wis. 2d 124, 130, 262 N.W.2d 80, 83 (1978). The sanction must be purgeable through compliance with the original court order. *King,* 82 Wis. 2d at 130, 262 N.W.2d at 83; *see* § 785.04(1)(b), STATS. Courts also may provide a purge condition as an alternative means for contemnors to remove the sanction. *See Larsen,* 165 Wis. 2d at 685, 478 N.W.2d at 20. This form of contempt power serves only to enforce the rights of a litigant. *See King,* 82 Wis. 2d at 129, 262 N.W.2d at 82.

On the other hand, punitive contempt is geared towards preserving the general authority of a court. *See* § 785.01(2), STATS.; *King,* 82 Wis. 2d at 129, 262 N.W.2d at 82. A court issuing a punitive sanction is not specifically concerned with the private interests of a litigant; it is used to discipline a party for its contemptuous conduct. *See King,* 82 Wis. 2d at 130, 262 N.W.2d at 83.

James argues that the trial court's contempt sanction falls into this latter category and thus is void because the court did not comply with the procedure for enforcing punitive contempt outlined in § 785.03(1)(b), STATS. The trial court answered this argument as follows:

> [If] a person doesn't make regular and timely payments, and they continue to do this for six times, then I don't think—I think it's remedial that they serve six months and maybe they won't do it again. That's the idea.

From this description we see one purpose of this sanction was to ensure future compliance with the court's

*Considerations for Reform,* 1975 WIS. L. REV. 1117, 1119-22, 1128-29.

orders; thus, it resembles a remedial sanction. However, the method of ensuring compliance is to personally expose James to the power of the trial court.

While we sympathize with its position, the trial court nonetheless erred. The above passage reveals that the court failed to fully recognize the distinction between remedial and punitive contempt. The party cited for punitive contempt must be provided appropriate due process. *See King,* 82 Wis. 2d at 131, 262 N.W.2d at 83. With a remedial sanction, however, the contemnor's ability to avoid the sanction, through compliance with the original order or satisfaction of the purge condition, obviates the need for due process. *See id.* Thus, since this is a punitive sanction, it is void because the contemnor has not been provided with due process.

The county nonetheless argues that this type of remedial sanction, imprisonment for a definite term, is a necessary part of a trial court's toolbox. Without such power, obstinate litigants such as James could take the court to the brink of its authority each time he or she was asked to comply with a court order.

Such concerns, however, seem extremist given the very narrow scope of James's appeal. He has only challenged the court's remedial contempt order which called for a mandatory six-month confinement. We have found this order void because it is not designed to coerce James into compliance with existing orders, but rather is aimed at deterring future misconduct, *i.e.,* it is a punitive sanction. Nevertheless, the court is not at all foreclosed from sending a message to James. It must simply refer the matter to the district attorney or the attorney general. *See* § 785.03(1)(b), STATS.

970

*By the Court.*—Order reversed.