In re the Marriage of: Heidi Frisch f/k/a Heidi Henrichs, Petitioner-Respondent,†

v.

Ronald J. Henrichs, Respondent-Appellant.

Court of Appeals

*No. 2005AP534. Oral argument January 10, 2006.
—Decided March 1, 2006.*

2006 WI App 64

(Also reported in 713 N.W.2d 139.)

† Petition to review granted 6-14-06.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Richard J. Podell* and *Barbara J. Stippich* of *Richard J. Podell & Associates, S.C.* of Milwaukee. There was oral argument by *Richard J. Podell*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas L. Frenn* and *Kelly M. Dodd* of *Petrie & Stocking, S.C.* of Milwaukee. There was oral argument by *Kelly M. Dodd*.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Ronald J. Henrichs and

Heidi Frisch, f/k/a/ Heidi Henrichs, divorced in 1993 after a ten-year marriage. The ensuing litigation—a bitter tangle of alleged fraud, misrepresentation, unfairness, contempt, public policy arguments, overtrial and garden-variety buyer's remorse—has worn on longer than the marriage that spawned it. In its painstaking attempt to undo this Gordian knot, the circuit court mistook remedial contempt for Alexander's sword. We commend the court for its efforts, but conclude nonetheless that its remedy cannot be sustained.

¶ 2. Ronald's appeal is from a postdivorce judgment finding him in contempt of court for fraudulently failing to timely provide copies of his income tax returns to Heidi as required by a 1996 stipulation and a prior order of the family court. Although Ronald had belatedly supplied the returns, the family court nonetheless found him in contempt and ordered him to pay $100,000 as a sanction because the returns showed a level of income greater than that previously represented by Ronald. Despite the tortuous path of this case, this appeal turns on one narrow, but important, issue: whether the family court's use of remedial contempt was proper. We hold it was not because the facts and the procedure of this case lack the necessary hallmarks of remedial contempt. We therefore reverse the contempt judgment.

¶ 3. Besides imposing a remedial contempt sanction against Ronald, the family court also determined that Ronald had engaged in overtrial and imposed a $32,000 sanction for such conduct. But, because this sanction was premised on the court's prior contempt finding, we are compelled to also reverse this overtrial award. In addition, the family court ordered Heidi to pay support to Ronald based upon a change in place-

744

ment to Ronald of the parties' minor son. The parties dispute whether the court suspended this payment until Ronald had paid the contempt and overtrial sanctions to Heidi, but because we reverse the judgment, this issue is moot. We remand only for the court to determine the appropriate commencement date for Heidi's support payments.

## BACKGROUND

¶ 4. Although we review the judgment entered by Judge Ralph M. Ramirez on this appeal, the relevant trial court proceedings originated before Judge James Kieffer. In 1993, Judge Kieffer entered a judgment of divorce incorporating the parties' marital settlement agreement requiring Ronald to pay $600 per month in child support for the parties' two minor children. A provision of the agreement referenced WIS. STAT. § 767.263 (1993–94), which required payers of child support to report all substantial changes in income to the clerk of court.[1]

¶ 5. In the ensuing months, Heidi disputed the accuracy of Ronald's stated income. In January 1995, Heidi moved for: (1) an increase in child support pursuant to WIS. STAT. § 767.32, (2) a finding of contempt for Ronald's alleged failure to provide copies of his income tax returns, and (3) an award of costs and attorney fees. The filing of several additional motions ensued. Heidi's contempt motion subsequently was dismissed, and a hearing on her motion for increased child support was held in November 1995. At this hearing, Judge Kieffer found that Ronald had fraudu-

---

[1] The current statute requires notification to the county child support agency. All other references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

745

lently misrepresented his income. As a result, the judge set a revised child support award retroactive to February 1, 1995, and also ordered Ronald to annually provide Heidi with copies of his personal and corporate tax returns for as long as he had child support obligations. In addition, the judge found that Ronald had engaged in overtrial, and ordered him to pay $5000 in attorney fees.

¶ 6. On October 29, 1996, the parties entered into a stipulation modifying child support and imposing a four-year moratorium, ending on January 1, 2001, during which time both parties agreed they would not move to modify child support based on economic circumstances, specifically income fluctuations. The stipulation further recited Ronald's existing obligation to submit copies of his tax returns to Heidi. At the hearing on the proposed stipulation, Heidi's attorney[2] noted for the record that each of the parties had been assisted by a certified public accountant "so, there has been tax input and a lot of looking at this business by both sides." Under questioning by Judge Kieffer, both parties represented that they had discussed the stipulation with their respective attorneys, understood the provisions, had no questions, and believed the stipulation to be in their children's best interests. In addition, Judge Kieffer advised the parties that Wisconsin public policy frowns upon agreements that bar parents from seeking child support modifications and that the judge could not independently order what the parties were seeking to do on their own. The parties acknowledged this advice, and Judge Kieffer then approved the stipulation.

---

[2] At this time, Heidi was represented by Attorney Bruce M. Peckerman.

¶ 7. Except for a February 1999 stipulation modifying child support as a result of a change in dependent health and dental insurance, the parties remained out of court as agreed. Then in June 2002, after the moratorium had expired, Ronald sought to obtain primary placement of the parties' daughter and a concomitant reduction in child support. The family court commissioner granted this motion at a hearing on July 2, 2002.

¶ 8. In August 2002, Heidi filed a pro se contempt motion against Ronald for his failure to provide copies of his tax returns from 1996 through 2001 and for dishonest reporting of his gross income. By this time, the case had been assigned to Judge Ramirez, who presided over all of the subsequent proceedings. At a September 24, 2002 hearing on the motion, Heidi also orally requested an increase in child support. Judge Ramirez dismissed Heidi's contempt motion because Ronald had already, albeit belatedly, provided copies of the tax returns. In addition, Judge Ramirez directed Heidi to file a written motion relating to her request for increased support. The judge set a hearing date of January 8, 2003.

¶ 9. Before the hearing, Heidi abandoned her pro se status and retained current counsel, who immediately filed an "amended" motion seeking, among other things: (1) Wis. Stat. § 806.07 relief from the court commissioner's July 2002 order reducing Ronald's child support obligation, (2) increased child support retroactive to that time, and (3) an award of attorney fees and expenses based on a claim that Ronald's motion for child support and his defense of Heidi's motions were frivolous. In support, the motion alleged that Ronald had provided incomplete tax returns and had fraudulently misrepresented his actual income.

747

¶ 10. In the interim, activity continued apace. The parties filed requests for depositions and written discovery, followed by various motions to avoid, limit and compel such discovery, and a motion for a protective order. An emergency court order in November 2002 transferred temporary placement of the parties' minor son to Ronald.

¶ 11. At the January 8, 2003 hearing, Judge Ramirez confirmed the emergency order and formally transferred primary placement of the minor son to Ronald. Since the primary placement of both children now rested with Ronald, the judge ordered that child support from Ronald to Heidi immediately cease. Heidi then orally requested an increase in child support retroactive to 1996. The judge stated that this request would be taken up at a later date.

¶ 12. On May 20, 2003, Judge Ramirez addressed Heidi's request for Wis. Stat. § 806.07 relief and her contempt motion. However, the issues were not resolved at this hearing and the matter was again continued. In the interim, Ronald moved to dismiss Heidi's effort to retroactively modify child support and to limit the time frame of the evidence relating to his income. Two months later, Heidi filed a contempt motion against Ronald for his failure to provide notice that his income had substantially increased and failure to provide copies of his tax returns. Heidi also sought modification of support for the period of the moratorium.

¶ 13. Judge Ramirez next addressed the pending matters at a hearing on October 22, 2003. The judge denied Ronald's motion to limit the scope of the evidence as to his income, deferred action on Heidi's motion to retroactively modify child support, and set a hearing on the pending support and contempt issues for November 6, 2003. However, at the November 6 hear-

ing, the judge held these issues in abeyance, and, instead, addressed the question of whether the court should uphold the 1996 agreement between the parties. In answer, the judge found that the parties had entered into the agreement freely and voluntarily, and that the purpose of the 1996 agreement was not to limit child support, but to curb the pattern of contentious legal proceedings between the parties. The judge then asked the parties to submit letter briefs addressing whether the agreement violated public policy, and the matter was continued to November 25, 2003.

¶ 14. At the adjourned hearing, Judge Ramirez found no fraud or intentional misrepresentation in the making of the 1996 stipulation. However, he did find that Ronald subsequently had engaged in a "substantial amount" of misrepresentation, fraud and game-playing as to what constitutes "income." Nonetheless, the judge concluded that since the parties had been fully advised and well informed about the agreement and that it represented their intentions and wishes, the court would not overturn it. However, the judge added, there "needs to be an offset, but I don't know what that's going to be."

¶ 15. Judge Ramirez next took up the matter on April 7, 2004. At this hearing, the judge reversed his earlier ruling upholding the stipulation. The judge again observed that the 1996 agreement was made freely and voluntarily but that, upon reconsideration, it was not fair and equitable in light of later-revealed circumstances, resulting in a denial to the children of support to which they were entitled. Declaring the agreement to be against public policy, the judge "over-turn[ed] [him]self" on the grounds that the earlier decision had not "considered appropriately the perspec-

749

tive of the children." The judge then asked the parties to brief the issue of "what they think I can or should do in regards to that ruling" and adjourned the matter once more until June 15, 2004.

¶ 16. Despite asserting at various turns that she had not brought her motions under WIS. STAT. § 767.32, Heidi argued at the June 15 hearing that § 767.32(1m), (providing that the court "may not" revise the amount of child support), is phrased permissively, allowing the court discretion to retroactively modify support. Heidi also argued that under WIS. STAT. § 767.27(2m), Ronald's failure to disclose his assets set the stage for a WIS. STAT. ch. 785 contempt proceeding, such that it was within the court's inherent authority and broad discretion to fashion a monetary sanction in an amount tied to what Heidi claimed Ronald owed for child support. Judge Ramirez agreed, finding that, had child support been based on the amount "due and owing" to the children, Ronald would have paid approximately $221,000 more in support since 1996. The judge then found Ronald in contempt for intentionally failing to timely disclose accurate income figures, and ordered a $100,000 sanction against Ronald to compensate Heidi for the losses she suffered as a consequence of the contempt.

¶ 17. At this same hearing, Judge Ramirez also ordered Heidi to pay child support to Ronald in the amount of 17% of her income pursuant to the child support guidelines. However, the judge deferred these payments until the court had addressed Heidi's over-trial claim.[3]

---

[3] We assume that Judge Ramirez was referring to Heidi's earlier motion alleging that Ronald's motion to modify child support and his defense of Heidi's motion were frivolous. If we

¶ 18. Finally, Judge Ramirez conducted a hearing on November 12, 2004, on Heidi's claim of overtrial by Ronald. The judge determined that $32,000 of Heidi's attorney fees and expenses was reasonably attributable to Ronald's overtrial of the matter, and the judge ordered Ronald to pay this additional amount to Heidi. The final judgment recited that Heidi's support obligation was suspended until Ronald had paid the contempt and overtrial sanctions to Heidi.

¶ 19. Ronald appeals.

## DISCUSSION

¶ 20. Among his issues, Ronald challenges Judge Ramirez's use of contempt. On a related basis, Ronald argues that, however styled, the $100,000 contempt sanction was but an illegal retroactive modification of child support in disguise. He argues that WIS. STAT. § 767.32(1m) plainly limits retroactive support modification to the date of the service of the motion, and that WIS. STAT. § 806.07 likewise offers no authority to deviate from that retroactivity limitation. In addition, Ronald argues that § 806.07 offers no avenue to reopen the stipulation four years after its expiration. Heidi chafes at Ronald's insistence on labeling the sanction a retroactive support modification. She contends it was well within the court's discretion and authority under WIS. STAT. § 785.04(1)(a) to "translate Ronald's unreported income into a payment of money as a sanction for contempt."

---

are incorrect, we observe that the appellate record does not reveal a formal written motion from Heidi seeking overtrial sanctions against Ronald. However, Heidi did ask for compensation for her attorney fees in one of her letter briefs filed with the family court.

751

¶ 21. Various legal theories were argued through-out these proceedings and are repeated on appeal. But Judge Ramirez ultimately ruled on the basis of the contempt issue and that is the principal issue that we address on appeal. Therefore, we do not address Ronald's contention that the doctrines of equitable estoppel, issue preclusion and claim preclusion prohibit Heidi from litigating or relitigating her claims that Ronald fraudulently represented his income, nor Heidi's rejoinder that those claims lack merit because the matter was resolved by the parties' stipulation, not an adjudication.[4] We also need not address this case in light of Wis. Stat. § 767.32(1m), which Heidi now agrees does not apply. Since the circuit court ultimately based its decision and fashioned its remedy in the context of contempt, we limit our review to the propriety of that procedure.

### A. Standard of Review

¶ 22. We first consider the applicable standard of review. Citing *Haeuser v. Haeuser,* 200 Wis. 2d 750, 767, 548 N.W.2d 535 (Ct. App. 1996), *abrogated on other grounds, Kruckenberg v. Harvey*, 2005 WI 43, ¶¶ 60–62, 279 Wis. 2d 520, 694 N.W.2d 879, Ronald asserts, and Heidi tacitly agrees, that we review a circuit court's use of its contempt power as an exercise of judicial discretion. However, the cases describing a court's use of its contempt power in terms of a proper

---

[4] We observe, however, that a prior adjudication is the giving of a judgment. *Great Lakes Trucking Co. v. Black,* 165 Wis. 2d 162, 168, 477 N.W.2d 65 (Ct. App. 1991). A stipulation approved by the court is a final determination of the parties' rights under that action and even may act as a final judgment. *Id.* at 168–69.

exercise of discretion do not precisely describe the question before us. Those cases generally involve whether the *finding* of contempt was proper. Here, the question is whether contempt was statutorily authorized in the first instance—in other words, whether the law permitted the use of contempt under the facts and circumstances of the case. That is a question of law because the procedures and penalties are prescribed by statute. *Evans v. Luebke*, 2003 WI App 207, ¶¶ 16–17, 267 Wis. 2d 596, 671 N.W.2d 304. We review questions of law de novo. *Id.*, ¶ 16.

## B. Contempt

¶ 23. We move, then, to Judge Ramirez's use of contempt and the imposition of the sanction. Judge Ramirez found Ronald in contempt for fraudulently failing to timely provide copies of his tax returns to Heidi. And since these returns, once produced, revealed greater income to Ronald than previously represented, the judge reasoned that the children would have been entitled to greater child support than that prescribed by the parties' stipulation.

¶ 24. Our decision would take one of two distinct paths, depending upon whether the fraud infused the formulation of the 1996 stipulation, or arose after it. A close examination of the record of the 1996 proceedings before Judge Kieffer satisfies us that there was no "fraud in the inducement" of the stipulation. The parties were ably represented by skilled matrimonial lawyers and advised by certified public accountants. Judge Kieffer carefully ascertained that both parties understood all terms of the agreement and that the terms reflected their intentions, even to the extent of advising

that the court would be powerless to enter such an order absent the parties' request that the court do so. There was no showing, and Heidi does not contend, that she or her attorney and tax consultant were not privy to all of Ronald's relevant financial information at the time of the stipulation. Moreover, Heidi never seriously has argued that she was defrauded into making the stipulation.[5]

¶ 25. In addition, we do not read Judge Ramirez to have determined otherwise when the judge overruled his prior holding honoring the stipulation. Instead, as noted earlier, we conclude that Judge Ramirez's contempt finding was premised upon Ronald's *later* conduct of delinquently, and evidently dishonestly, reporting his income. The judge saw a need to remedy that situation on public policy grounds and turned to contempt as the remedy. Accordingly, we must examine whether those facts permitted the judge to employ contempt as a remedy for the wrong, and, further, whether the procedure employed complied with the law of contempt.[6]

---

[5] In her November 25, 2003 letter brief to the circuit court, Heidi did assert that her reassessment of the 1996 stipulation came about because her consent "was not the product of a conscientious, deliberate, and well-informed choice." Our extensive review of the record reveals that this argument was not pursued, however. While both Judge Kieffer and Judge Ramirez expressed qualms about Ronald's veracity, both judges nonetheless found that Heidi entered into the stipulation freely, knowingly and voluntarily. We agree.

[6] Although not necessary to our decision that Judge Ramirez improperly utilized remedial contempt in this case, we also disagree with the judge's ruling that the stipulation violated public policy. In *Honore v. Honore*, 149 Wis. 2d 512, 439 N.W.2d 827 (Ct. App. 1989), a stipulation executed in 1986 required the payer to maintain a stated level of support "notwithstanding a reduction in his income . . . until the youngest

¶ 26. Contempt of court is disobedience to the very authority, process or order of a court, and includes acts such as the refusal to produce a record or document. WIS. STAT. § 785.01(1)(b), (d). Contempt can be punished in two ways. A punitive, or criminal, sanction punishes a past contempt of court for the purpose of upholding the authority of the court. Sec. 785.01(2);

child . . . is in first grade, or until September 1, 1989." *Id.* at 514. The payer then sought a reduction of the child support based on a reduction in his income. *Id.* The family court granted the reduction, concluding that the stipulation was contrary to public policy. *Id.* The court of appeals reversed, concluding, first, that the stipulation was not contrary to public policy, *see id.* at 513, and then that the payer was estopped from reneging on the stipulation where the agreement was freely and knowingly made, the overall settlement was fair and equitable, and not illegal or against public policy. *Id.* at 517.

In a later case, *Krieman v. Goldberg*, 214 Wis. 2d 163, 571 N.W.2d 425 (Ct. App. 1997), a stipulation *permanently* set a level of unmodifiable child support. *Id.* at 166–67. The payer later lost his job, fell behind in his support payments, and was found in contempt. *Id.* at 167–68. The court of appeals reversed, concluding that the stipulation violated public policy. *Id.* at 178. However, the court noted that its holding did no violence to *Honore* because the time period of the stipulation in *Krieman* was permanent, whereas the *Honore* stipulation "included a point in time at which the stipulated payment could be reviewed and adjusted based on a change of circumstances." *Krieman*, 214 Wis. 2d at 175.

Unlike *Krieman*, the stipulation in this case was not permanent. To the contrary, it was limited to four years, a time frame very near to that in *Honore*. Moreover, as required by *Honore*, there is no showing that: (1) the stipulation was not freely and knowingly made by Heidi, (2) the stipulation was not fair and equitable to Heidi or the children, and (3) the stipulation was illegal or against public policy. Thus, this is an *Honore* case, not a *Krieman* case.

*see Diane K.J. v. James L.J.,* 196 Wis. 2d 964, 968–69, 539 N.W.2d 703 (Ct. App. 1995). A punitive sanction also requires that a district attorney, attorney general or special prosecutor formally prosecute the matter by filing a complaint and following procedures set out in the criminal code. WIS. STAT. § 785.03(1)(b). It is imposed less to address the private interests of a litigant than to discipline a party for contumacious conduct. *Diane K.J.,* 196 Wis. 2d at 969.

¶ 27. A remedial, or civil, sanction, by contrast, is imposed to ensure compliance with court orders for the purpose of terminating a continuing contempt of court. WIS. STAT. § 785.01(3); *Diane K.J.,* 196 Wis. 2d at 968. It comes about not at the behest of a prosecutor, but upon motion of the party aggrieved by the noncompliance. *See* WIS. STAT. § 785.03(1)(a). In addition, a remedial contempt sanction must be purgeable through compliance with the original court order. *Diane K.J.,* 196 Wis. 2d at 969.

¶ 28. It is obvious that the procedure in this case did not utilize criminal contempt, and neither the parties nor Judge Ramirez contended otherwise. Nonetheless, in the interests of completeness, we explain why. All violations of court orders and exhibitions of

Finally, we observe that Judge Kieffer was correct when he advised the parties that the court could not, on its own, impose the moratorium on child support modification. WISCONSIN STAT. § 767.25(1m) authorizes a trial court to modify child support payments. Thus, the moratorium required the agreement and consent of the parties. *See Bliwas v. Bliwas,* 47 Wis. 2d 635, 639–40, 178 N.W.2d 35 (1970) (where the court upheld a stipulation requiring a parent to contribute to the education expenses of child beyond the age of majority).

dishonesty can be said to be a "nose thumbing" at the court's authority. But not all such acts can reasonably be viewed as falling within the ambit of criminal contempt, or remedial contempt would be a hollow concept. Ronald's failure to timely provide Heidi with copies of his tax returns, while objectionable under the terms of the stipulation, did not assail the essential authority of the court. Moreover, a punitive sanction is limited to a jail sentence or fine, or both, WIS. STAT. § 785.04(2)(a), and does not allow for the compensatory sanction styled here. We find no provision in the statutes or case law for some hybrid of the two types of sanctions. The remedies authorized by statute are the exclusive remedies available. *State ex rel. N.A. v. G.S.,* 156 Wis. 2d 338, 341, 456 N.W.2d 867 (Ct. App. 1990). Punitive sanctions may not be imposed in remedial sanction proceedings. *Id.*

¶ 29. Judge Ramirez himself termed the sanction in this case a remedial sanction, and, in language reflective of the remedial sanction statute, the judge said the sanction was to compensate Heidi and the children for the loss incurred as a result of Ronald's contempt. *See* WIS. STAT. § 785.04(1)(a) (a remedial sanction includes "[p]ayment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court"). Both parties agree with Judge Ramirez, as do we, that the contempt sought in this case was remedial contempt.

¶ 30. However, we disagree that remedial contempt was properly employed in this case. As noted, a remedial sanction is imposed to ensure compliance with court orders for the purpose of terminating a *continuing* contempt of court. WIS. STAT. § 785.01(3); *Diane K.J.,* 196 Wis. 2d at 968. Here, Ronald's contempt was

his failure to furnish accurate income information by way of timely produced copies of tax returns. But the undisputed fact is that the returns were produced, albeit belatedly, prior to any pronouncement of contempt. Thus, any prior contempt was no longer ongoing. This is so whether we gauge Ronald's obligation to provide copies of his tax returns under the stipulation or under Judge Kieffer's earlier order to the same effect. Moreover, this contempt (or any other behavior by Ronald that might be so labeled), lacked one indispensable feature of remedial contempt: that it be purgeable.[7] *Diane K.J.*, 196 Wis. 2d at 968–69.

¶ 31. An additional problem exists assuming that Ronald's contempt is assessed under the terms of the stipulation. WISCONSIN STAT. § 785.04(1)(a) allows, as a remedial sanction, the payment of a sum of money for "a loss or injury suffered by the party *as the result of a contempt of court.*" (Emphasis added.) Here, the contempt of court was Ronald not furnishing copies of the required tax returns. The question then is whether that contempt resulted in a loss to Heidi. The $100,000 sanction for "underassessed" child support was based upon Judge Ramirez's finding that Ronald's fraud was his withholding tax returns during the term of the stipulation, so as not to divulge his true financial status. But under the terms of the parties' agreement, Heidi was barred anyway from seeking a change in support based upon any additional income.[8] Accordingly, there can have been no loss or injury to her "as the

---

[7] If purge conditions had been imposed, we assume they would have included the most likely—production of the tax returns—something Ronald had already done.

[8] We take note that even though Ronald's belatedly produced tax returns showed income levels greater than Heidi

758

result of a contempt" which could have been addressed under Wis. Stat. ch. 785.[9]

¶ 32. Heidi argues that *Griffin v. Reeve,* 141 Wis. 2d 699, 416 N.W.2d 612 (1987), supports her position that remedial contempt is an appropriate means by which to enforce a child support obligation. That generally may be so, but *Griffin* specifically involved the question of using the contempt statute to enforce arrearage beyond the age of majority. *Id.* at 706. Here, the contempt is not failure to pay support, but failure to provide copies of the tax returns, and that failure was remedied well before contempt was invoked and the sanction imposed.

¶ 33. Like Judge Kieffer before him, Judge Ramirez was troubled by Ronald's cavalier attitude toward both the court and the truth. We share that concern. Judge Ramirez observed that "any information from Mr. Henrichs is suspect . . . . If Mr. Henrichs told me it was daylight and sunny out, I'd have to check my watch and I'd have to look out the window." But scofflaw or not, it remains that Ronald had supplied copies of his tax returns to Heidi in advance of the contempt hearing, the contempt finding and the contempt sanction. In short, any prior contempt was no longer ongoing as required by the law of remedial contempt.

expected, she made no claim that the children were not adequately supported by the support payments mandated by the stipulation.

[9] However, if Ronald's contempt is assessed under Judge Kieffer's prior order directing that Ronald provide his tax returns, then Heidi has established causation since that order did not bar the parties from seeking modification of Ronald's support modification. But, as noted earlier, Ronald's contempt under either scenario was not a "continuing" contempt.

## C. Wisconsin Stat. § 806.07

¶ 34. The parties also debate whether Heidi was entitled to relief under Wis. Stat. § 806.07. As noted, Ronald characterizes the circuit court's contempt order and sanction as an improper retroactive support modification contrary to Wis. Stat. § 767.32(1m) and that § 806.07 offers no relief from that retroactivity limitation. Ronald also argues that § 806.07 offers no relief from a stipulation agreed to four years earlier. However, Heidi herself argued at the June 2004 hearing that the court could sidestep a § 806.07 analysis in favor of a contempt sanction. And, most importantly, Judge Ramirez ultimately granted relief under the law of contempt, not § 806.07.

¶ 35. Therefore, we decline to venture into the area of Wis. Stat. § 806.07 in a case where the parties did not fully litigate the issue and the family court did not rule on the question. Moreover, we are reluctant to closely scrutinize the application of a statute that Judge Ramirez only generally considered, and which, on appeal, Ronald argues does not apply and Heidi does not even address. In particular, Judge Ramirez appears not to have addressed at all the interplay between § 806.07(1)(h), the "catchall" subsection and the retroactivity question raised by Ronald.

### D. Overtrial

¶ 36. Judge Ramirez also ordered Ronald to pay $32,000 of Heidi's attorney fees on the grounds that he had engaged in "overtrial." Overtrial is a family law doctrine that may be invoked when one party's unreasonable approach to litigation delays resolution of the

matter and causes the other party to incur unnecessary fees. *Zhang v. Yu*, 2001 WI App 267, ¶ 13, 248 Wis. 2d 913, 637 N.W.2d 754.

¶ 37. However, Judge Ramirez's overtrial award to Heidi was premised on the judge's contempt finding against Ronald. With the contempt judgment reversed, we also must reverse the overtrial portion of the judgment.

### E. Written Findings and Judgment

¶ 38. At the conclusion of the final hearing, Judge Ramirez directed Heidi's counsel to prepare proposed written findings of fact, conclusions of law and the judgment. Counsel did so, and the judge signed the document in its entirety over Ronald's challenge that Heidi had inserted provisions not actually determined by the judge.

¶ 39. Our reversal of the contempt and overtrial provisions of the judgment renders this issue moot. Findings of fact and conclusions of law, whether correct or incorrect, cannot stand alone. Rather, they must be anchored by an accompanying order or judgment. It logically follows that when a judgment or order is reversed, the underlying findings of fact and conclusions of law in support thereof are no longer of any legal effect or consequence. *See People v. Cooper*, 780 N.E.2d 304, 314 (Ill. 2002) (Harrison, C.J., dissenting) ("Once the appellate court reversed the circuit court's judgment granting the State's petition, the circuit court's judgment therefore ceased to have any effect. No further action by [the defendant] was required. *By operation of law, the finding that she was unfit was rendered*

*a nullity.* She regained her parental rights as if they had never been lost." (Emphasis added.)). *See also City of Columbus v. Town of Fountain Prairie,* 134 Wis. 593, 603, 115 N.W. 111 (1908) ("That part of the order imposing costs on the defendant falls with the reversal of the order overruling the demurrer . . . .").

## F. Heidi's Child Support Obligation

¶ 40. Ronald contends that Judge Ramirez erred in the exercise of his discretion by declining to order Heidi to pay child support as of January 8, 2003, the date that placement of the parties' minor son was formally transferred to Ronald. Instead, the judge ruled that Heidi's support obligation commenced on November 1, 2004, the date that the judge entered the support order. In addition, the judgment ordered that Heidi's support obligation be suspended until Ronald had paid the contempt and overtrial sanctions.[10]

¶ 41. A child support order is within the circuit court's sound discretion, and our review is limited to whether the court properly exercised its discretion. *Weiler v. Boerner,* 2005 WI App 64, ¶ 19, 280 Wis. 2d 519, 695 N.W.2d 833. Here, as with the overtrial issue, the order suspending Heidi's support obligation was premised on Ronald complying with the contempt sanction and paying the overtrial award. Since we have reversed the contempt and overtrial sanctions, it follows that we also must reverse the suspension of Heidi's child support payments.

---

[10] Ronald contends that Judge Ramirez never made an express determination suspending Heidi's support, and that Heidi improperly included this provision in the judgment. As we have already held, this is a moot point because we have reversed the judgment. *See* supra, ¶¶ 37, 39.

¶ 42. That leaves only the question of when Heidi's support obligation should commence. Although Judge Ramirez fixed November 15, 2004, as the commencement date, rejecting Ronald's requested date of January 8, 2003, which was the date custody of the remaining child was formally granted to him, we are uncertain whether the judge's ruling on this matter was influenced by the judge's prior entry of the contempt and overtrial sanctions. Given our reversal of both sanctions, we think it more prudent that we remand this narrow issue to the family court for further consideration in light of our rulings.

## CONCLUSION

¶ 43. We reverse the judgment in total, save the amount of Heidi's support obligation. We remand for the family court to consider the commencement date of Heidi's support obligation.

*By the Court*—Judgment reversed and cause remanded with directions.