COURT OF APPEALS
DECISION
DATED AND FILED

**February 4, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.**    **2017AP2474**

**STATE OF WISCONSIN**

Cir. Ct. No. 2014FA95

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

WILLIAM RUSSELL ROBERTS,

    PETITIONER-APPELLANT,

  V.

ANDREA A. PERONE P/K/A ANDREA ANN ROBERTS,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. William Roberts appeals a postdivorce order granting a motion filed by his former spouse, Andrea Perone, to lift a stay of a sanction the circuit court had previously imposed after finding Roberts in contempt for failing to comply with the terms of the parties' divorce judgment.[1]  Roberts argues:  (1) the circuit court judge was biased against him and should have recused himself; (2) the court should have ordered a competency evaluation of Roberts before permitting him to represent himself; (3) Roberts is entitled to relief under WIS. STAT. § 100.18 (2017-18)[2] because Perone's attorney misrepresented the terms of the parties' marital settlement agreement; and (4) the court erred by ordering Roberts to spend sixty days in jail as a sanction for his contempt without specifying any purge conditions.  We reject these arguments and affirm.[3]

## BACKGROUND

¶2     Roberts petitioned for divorce from Perone in May 2014.  In October 2014, the circuit court entered a judgment of divorce that incorporated a marital settlement agreement (MSA) signed by the parties.  The MSA required Roberts to make a property division equalization payment of $87,000 to Perone, consisting of monthly payments of $1000 from October 2014 through July 2019 and a lump sum payment in June 2019.  The equalization payment was secured by a first mortgage on certain real estate located in Chetek that had been awarded to Roberts.

---

[1] Although Perone was represented by counsel in the circuit court, both parties are unrepresented on appeal.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] The statement of issues in Roberts' brief-in-chief purports to raise twenty-one separate issues for our consideration.  However, the argument section of Roberts' brief addresses only the four issues identified above.  We therefore confine our discussion to those four issues.

¶3     In December 2014, Roberts signed qualified domestic relations orders (QDROs) regarding two of his pensions, and those orders were approved by the circuit court in February 2015. The court ultimately entered a third QDRO regarding another of Roberts' pensions in October 2015.

¶4     In May 2016, Perone moved the circuit court to find Roberts in contempt for violating the divorce judgment. She alleged that Roberts had failed to make the required monthly equalization payments and to pay real estate taxes as required by the mortgage on the Chetek property awarded to Roberts in the divorce property division and used to secure the equalization payments. Following a hearing, the court entered an order on July 27, 2016, finding Roberts in contempt. The court ordered Roberts to spend sixty days in jail as a sanction, but it "stayed" that sanction subject to Roberts' compliance with a number of purge conditions. Specifically, Roberts was required to pay all past due monthly equalization payments and real estate taxes by October 15, 2016; to timely make all future equalization payments and pay all future real estate taxes; and to pay Perone's travel expenses and attorney fees associated with the contempt motion by October 15, 2016.

¶5     On August 30, 2016, Roberts filed a notice of appeal from the July 27, 2016 contempt order. On the same day, he filed a motion asking the circuit court judge—the Honorable J. Michael Bitney—to recuse himself. As grounds for that motion, Roberts alleged that Judge Bitney had signed four ex parte orders without his knowledge—namely, the three QDROs and the July 27, 2016 contempt order. He also alleged that Judge Bitney had engaged in "continued ex parte communication" with Perone's attorney and his law firm. Judge Bitney entered an order denying Roberts' recusal motion on September 26, 2016.

¶6     On August 22, 2017, Perone filed a motion to lift the stay of the contempt sanction and enforce the circuit court's order that Roberts spend sixty days in jail. As grounds for that motion, she alleged that Roberts had failed to satisfy the purge conditions set forth in the July 27, 2016 contempt order. On November 3, 2017, following a hearing, the court entered an order granting Perone's motion and ordering Roberts to spend sixty days in jail. Roberts then filed a second notice of appeal purporting to challenge both the court's November 3, 2017 order and "[t]he entire [d]ivorce."

¶7     On September 4, 2019, we issued an order summarily affirming the circuit court's July 27, 2016 contempt order. *Roberts v. Roberts*, No. 2016AP1709, unpublished op. and order (WI App Sept. 4, 2019). We concluded that although Roberts had appealed from the contempt order, he made no argument regarding that order on appeal and did not assert the court had erroneously exercised its discretion by finding him in contempt. *Id.* at 4. We therefore held that Roberts had "abandoned his appeal of the circuit court's contempt order." *Id.*

¶8     We then observed that, rather than developing an argument regarding the contempt order, Roberts had raised two other issues on appeal. *Id.* at 4-5. As to the first issue, we rejected Roberts' argument that Judge Bitney should have recused himself because he had "friended" Perone's attorney on Facebook, which Roberts believed was an improper ex parte communication and gave rise to the appearance of partiality. *Id.* at 5. We also rejected Roberts' argument that the circuit court should have ordered him to undergo a mental competency evaluation. *Id.* at 6. We concluded both of Roberts' arguments were inadequately developed and were not properly before us because they appeared to challenge the divorce judgment—which was not at issue on appeal—rather than the contempt order. *Id.* at 5-6.

**DISCUSSION**

¶9     We now turn to the issues Roberts raises in the instant appeal of the circuit court's November 3, 2017 order lifting the stay of the previously imposed contempt sanction and ordering Roberts to spend sixty days in jail.

¶10     We begin by noting that our review of this appeal has been hindered by the poor quality of both parties' briefs, which contain multiple violations of the Rules of Appellate Procedure.  For instance, both parties have included numerous factual assertions in their briefs that are unsupported by references to the appellate record, in violation of WIS. STAT. RULE 809.19(1)(d) and (e).  In addition, the argument section of Roberts' brief-in-chief is not "arranged in the order of [his] statement of issues presented," as required by RULE 809.19(1)(e).  Furthermore, Roberts' appendix includes multiple documents that are not included in the appellate record.  A party's appendix must contain "limited portions *of the record* essential to an understanding of the issues raised," RULE 809.19(2)(a) (emphasis added), and it may not be used to supplement the record, ***Reznichek v. Grall***, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989).

¶11     The Wisconsin Court of Appeals is a high-volume court.  *See **State v. Bons***, 2007 WI App 124, ¶21, 301 Wis. 2d 227, 731 N.W.2d 367.  The time we may devote to each case is limited.  In this case, both parties have placed an unwarranted burden on this court.  Therefore, we admonish the parties that future violations of the Rules of Appellate Procedure may result in sanctions, including the striking of noncompliant briefs.[4]  *See* WIS. STAT. RULE 809.83(2).

---

[4] In his reply brief, Roberts asks us to strike Perone's brief based on its failure to comply with the Rules of Appellate Procedure.  We decline to do so, given the significant rule violations contained within Roberts' own appellate briefs.

¶12    In addition, we observe that many of Roberts' arguments are inadequately developed and difficult to understand. We address his arguments as best we can discern them, but we note that we have no duty to address undeveloped arguments or to develop arguments on a party's behalf. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82; *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶13    Finally, we observe that Roberts has raised a number of arguments in this appeal that pertain to the validity of the divorce judgment. However, the time period in which to appeal from the divorce judgment, which was entered in October 2014, has long since passed. *See* WIS. STAT. § 808.04(1) (stating an appeal to the court of appeals must be initiated within forty-five days of entry of a final judgment or order if written notice of entry of the final judgment or order was given, or within ninety days if such notice was not given). Roberts' arguments regarding the divorce judgment are therefore not properly before us, and we will not further address them.

## I.    Recusal of Judge Bitney

¶14    Roberts first argues on appeal that Judge Bitney is objectively biased against him, and, as a result, "retroactive disqualification and [a] new hearing with a new judge is warranted." Specifically, Roberts claims that Judge Bitney engaged in an improper ex parte communication with Perone's attorney when he accepted that attorney's "friend request" on Facebook, which created the appearance of partiality.

¶15    This argument fails for several reasons. First, Roberts provides no record citations supporting his assertion that Judge Bitney accepted a Facebook

"friend request" from Perone's attorney. "[W]e will not consider arguments unsupported by citations to the record."[5] *State v. Boshcka*, 178 Wis. 2d 628, 637, 496 N.W.2d 627 (Ct. App. 1992).

¶16     Second, it appears Roberts' argument that Judge Bitney should have recused himself based on an alleged Facebook friendship with Perone's attorney was not raised in the circuit court. Roberts' recusal motion did not raise the alleged Facebook friendship as a basis for recusal, and Roberts does not point to any other portion of the appellate record showing that he raised that issue in the circuit court. We need not address issues raised for the first time on appeal, and "[t]he party alleging error has the burden of establishing, by reference to the record, that the error was raised before the [circuit] court." *Young v. Young*, 124 Wis. 2d 306, 316, 369 N.W.2d 178 (Ct. App. 1985).

¶17     Third, in Roberts' previous appeal, we rejected his argument that Judge Bitney should have recused himself based on the alleged Facebook friendship with Perone's attorney. *See Roberts*, No. 2016AP1709, at 5-6. Roberts does not explain why we should consider this issue anew in the present appeal, given our previous rejection of his recusal argument.

---

[5] The only citation Roberts provides to support his argument regarding the alleged Facebook friendship is to a document in his appendix. However, there are several problems with that citation. First, citations to a party's appendix, rather than to the appellate record, are improper. *See United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. Second, the document Roberts cites in his appendix does not appear to be part of the appellate record, and we may not consider materials outside of the record. *See South Carolina Equip., Inc. v. Sheedy*, 120 Wis. 2d 119, 125-26, 353 N.W.2d 63 (Ct. App. 1984). Third, Roberts' general citation to a twenty-five page document, without citing a specific page, is inappropriate. *See State v. Milanes*, 2006 WI App 259, ¶21, 297 Wis. 2d 684, 727 N.W.2d 94. Fourth, our review of that document indicates that it does not contain any reference to an alleged Facebook friendship between Judge Bitney and Perone's attorney. Thus, even if we could consider the document in our analysis, it does not provide any support for Roberts' argument that Judge Bitney should have recused himself.

¶18    In his reply brief, Roberts argues for the first time in this appeal that Judge Bitney was objectively biased because he signed the QDROs ex parte without Roberts' knowledge.  We need not consider arguments raised for the first time in a reply brief.  *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).  In any event, the record shows that Roberts signed two of the three QDROs before Judge Bitney approved them in February 2015.  Perone's attorney sent the third QDRO to Roberts for his review and signature, but Roberts did not respond.  Counsel then sent the third QDRO to the circuit court, informing the court that Roberts had not responded to counsel's letter and asking the court to approve the QDRO.  A copy of counsel's letter to the court regarding the third QDRO was sent to Roberts.  On this record, we reject Roberts' assertion that Judge Bitney signed the QDROs ex parte without his knowledge.

¶19    Finally, to the extent Roberts intends to argue that Judge Bitney was objectively biased because he ordered Roberts to serve sixty days in jail as a contempt sanction without setting a purge condition, we observe that an adverse ruling, by itself, is generally insufficient to establish bias.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994).  Moreover, as discussed in greater detail below, we reject Roberts' argument that the circuit court erred by ordering him to serve sixty days in jail without setting a purge condition.

## II.    Competency evaluation

¶20    Roberts next argues that the circuit court should have ordered a competency evaluation of Roberts before allowing him to represent himself.  He appears to contend that, because he was not competent, he could not knowingly and intelligently waive his constitutional right to counsel.  This argument fails, however, because a litigant has no constitutional right to be represented by counsel in a civil

matter. *See Village of Big Bend v. Anderson*, 103 Wis. 2d 403, 405, 308 N.W.2d 887 (Ct. App. 1981).

¶21    In addition, Roberts' argument regarding the need for a competency evaluation is undeveloped. He does not cite the legal standard a court must apply when deciding whether to order a competency evaluation, nor does he explain how the facts of this case satisfy that standard. Moreover, although Roberts asserts that he suffers from "severe schizophrenia and a severe hoarding disorder," he does not provide any record citations in support of those assertions, nor does he cite any evidence supporting a conclusion that those conditions render him incompetent. Again, we need not consider arguments that are undeveloped or unsupported by citations to the appellate record. *See Boshcka*, 178 Wis. 2d at 637; *Pettit*, 171 Wis. 2d at 646-47.

¶22    To the extent Roberts intends to argue that he was not competent to sign the MSA, we again note that the time to appeal from the divorce judgment, which incorporated the MSA, has long since passed. We also reject as undeveloped any attempt by Roberts to argue that he was not competent to sign the two QDROs that were approved by the circuit court in February 2015. Once again, while Roberts generally asserts that he suffers from schizophrenia and a hoarding disorder, he does not cite any portions of the appellate record supporting those assertions, nor does he provide any record support for a conclusion that he was incompetent at the time he signed the QDROs.

### III.    Relief under WIS. STAT. § 100.18

¶23    Roberts next argues that he is entitled to relief under WIS. STAT. § 100.18, which prohibits certain fraudulent misrepresentations. He contends Perone's attorney violated § 100.18 by misrepresenting the terms of the MSA to

him and by "cop[ying] and past[ing]" his signature onto the MSA. Roberts appears to argue that, because of counsel's improper conduct, the MSA and the divorce judgment incorporating it are invalid. As we have repeatedly noted, however, the time to appeal from the divorce judgment elapsed long ago. Consequently, any issues regarding the validity of the divorce judgment and the incorporated MSA are not properly before us, and we therefore decline to address them.

### IV. Imposition of a remedial contempt sanction without purge conditions

¶24 Under WIS. STAT. ch. 785, a court has authority to "impose a remedial or punitive sanction for contempt of court." WIS. STAT. § 785.02. A remedial sanction means "a sanction imposed for the purpose of terminating a continuing contempt of court." WIS. STAT. § 785.01(3). A court may impose a term of imprisonment as a remedial sanction "if the contempt of court is of a type included in s. 785.01(1)(b)." WIS. STAT. § 785.04(1)(b). WISCONSIN STAT. § 785.01(1)(b), in turn, provides that "contempt of court" includes intentional "[d]isobedience, resistance or obstruction of the authority, process or order of a court."

¶25 On July 27, 2016, the circuit court found Roberts in contempt under WIS. STAT. § 785.01(1)(b) for failing to comply with the terms of the divorce judgment. The court therefore imposed a remedial sanction—that is, a sanction imposed for the purpose of terminating Roberts' continuing contempt. Specifically, it imposed (and stayed) a sixty-day jail term. That sanction was permissible under WIS. STAT. § 785.04(1)(b).

¶26 A remedial sanction must be purgeable through compliance with either the original court order or an alternative purge condition. *See Diane K.J. v. James L.J.*, 196 Wis. 2d 964, 968-69, 539 N.W.2d 703 (Ct. App. 1995). Roberts therefore argues that the circuit court erred because its November 3, 2017 order

10

lifting the stay of his sixty-day jail term did not include any purge conditions. This argument fails, however, because it ignores the fact that the court set forth purge conditions in its July 27, 2016 contempt order. Roberts could have avoided serving the sixty-day jail term had he complied with those conditions, but it is undisputed that he failed to do so. In fact, the court found—and Roberts does not dispute—that Roberts did not make a good faith effort to comply with those conditions. Given Roberts' intentional refusal to comply with both the divorce judgment and the purge conditions, the court could reasonably determine that lifting the stay of his sixty-day jail term was the proper method to obtain his compliance and thereby terminate his contempt.[6] We therefore reject Roberts' argument that the court erred by imposing a remedial contempt sanction without setting any purge conditions.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Notably, a similar procedure was employed by the circuit court in *State ex rel. V.J.H. v. C.A.B.*, 163 Wis. 2d 833, 472 N.W.2d 839 (Ct. App. 1991). There, the circuit court found a putative father in contempt and imposed jail time as a sanction, but it then stayed that sanction subject to certain purge conditions. *Id.* at 838, 842. On appeal, we observed that purge conditions "have been described as the 'keys to the jail house door,' and it is not unreasonable to require the contemnor to use the keys to avoid jail." *Id.* at 843.